[No. D043380. Fourth Dist., Div. One. Oct. 4, 2004.]

T.H., a Minor, etc., Plaintiff and Respondent, v.
SAN DIEGO UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

COUNSEL

Higgs, Fletcher & Mack, John Morris, Steven J. Cologne and Dianne M. Schweiner for Defendant and Appellant.

Law Offices of Thomas S. Nelson, Thomas S. Nelson; Cochrane & Nelson, Michael S. Cochrane and Thomas S. Nelson for Plaintiff and Respondent.

OPINION

**HALLER, J.**—A middle school vice-principal recommended that a student, T.H., be expelled from school because she was involved in repeated acts of fighting. After a series of hearings, the San Diego Unified School District (District) agreed with this recommendation and expelled T.H. from its schools. Under state law, this type of offense can lead to an expulsion, but a school principal has the discretion to decide not to refer the matter to the governing school board for an expulsion hearing. Under the District's "zero tolerance" administrative regulations, a school principal (or designee) has no such discretion and referral is mandatory. T.H. asserted a facial challenge to these administrative regulations, claiming they violate state law and are unconstitutional. The trial court agreed and entered judgment enjoining the District from enforcing the challenged regulations. The District appeals. We conclude the challenged regulations do not violate applicable state law or constitutional principles and reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A vice-principal at Kroc Middle School (Kroc) observed T.H., age 12, physically fighting with another student. T.H. had been involved in two previous fighting incidents during the school year. Under the District's zero tolerance rules, the vice-principal suspended T.H., and referred her to the District's Placement and Appeal Office for an expulsion hearing. A hearing was then held before a three-person panel (Expulsion Review Panel), consisting of administrators from other schools. Several people testified at the hearing, including Kroc's vice-principal and Kroc's campus supervisor, who both witnessed T.H.'s latest fight. T.H. also testified, and her mother was present at the hearing.

After considering the evidence, the Expulsion Review Panel found T.H. willfully used force in attempting to cause physical injury to another student, and this was T.H.'s third fighting incident in the past school year. The panel found expulsion was a proper remedy because "[o]ther means of correction are not feasible" and T.H.'s continued presence at the school "causes a continuing danger to the physical safety of herself and others." The panel found that "[o]ther means of correction have repeatedly failed to bring about proper conduct as evidenced by five previous suspensions" for "disruption/defiance, sexual harassment, [and] physical injury . . . ." The panel further found T.H. had previously engaged in assault and battery and drug paraphernalia-related offenses. The panel also noted that T.H. had signed a "Zero Tolerance Contract," and received numerous previous warnings and discipline by school officials. The panel found that T.H.'s misconduct was not caused by any disability, and that she had been appropriately placed at the time she committed the misconduct.

Based on these findings, the Expulsion Review Panel recommended that T.H. be expelled from District schools, but recommended that enforcement of the expulsion order be suspended and T.H. be placed in an alternative program, with specified conditions including that she not violate any school rules. The Board of Education (Board) agreed with the panel's factual findings and recommendations.

Several days after being placed in the alternative program, T.H. was suspended because she violated a school rule when she engaged in a physical confrontation with a school staff member. Based on this incident, the District reinstated the expulsion order. T.H. was thereafter placed in a community school, where she was allegedly sexually harassed and physically assaulted by older male students.

T.H. then brought a civil action against the District and several parties allegedly involved in, or responsible for, the community school incident.

After granting the District's demurrer on the personal injury causes of action, the court severed the remaining claims against the District because they were unrelated to the community school incident. In these claims, T.H. alleged: (1) the District's "zero tolerance" policy of *requiring* a principal to recommend an expulsion hearing for a student who has committed certain offenses violates state statutes and is unconstitutional; and (2) the District's policy of not providing a full evidentiary hearing before revoking a suspended expulsion order violates state statutes and is unconstitutional.

These claims were tried before the court on a documentary record, consisting of the District's administrative regulations, form notices sent to parents, and the legislative history of various statutes. At the trial, T.H.'s counsel reiterated that T.H.'s claims against the District constituted a facial challenge to the District's policies and were not dependent on the particular facts of T.H.'s case. T.H. sought only injunctive and declaratory relief.

After considering the submitted documents and lengthy arguments by counsel, the court found T.H. proved her claims that the District's mandatory referral policies violate applicable statutes and violate a student's due process rights, and that the District's rules improperly permit expulsions for offenses not identified in the state statutes.[1] But the court found against T.H. on her challenge to the procedures for revoking a suspended expulsion decision. The court thus entered judgment enjoining the District "from enforcing or utilizing its Zero Tolerance Policy . . . to the extent the Policy requires a principal or superintendent to recommend expulsion of pupils in circumstances other than those circumstances explicitly identified in the Education Code as requiring a recommendation for expulsion from a principal or superintendent." The court then stayed enforcement of the injunction pending resolution of all appeals.

The District appeals from the portions of the judgment finding: (1) the District's mandatory expulsion recommendation procedures violate state statutes and a student's due process rights; and (2) the District's regulations too broadly define the offenses that can support an expulsion and thereby violate a student's statutory and due process rights. T.H. did not appeal from the portion of the judgment upholding the District's procedures for revoking a suspended expulsion and we therefore do not address the revocation issue in this appeal.

---

[1] Although T.H. did not specifically allege this latter claim in her complaint, the court found that it was encompassed within the general allegations of the complaint.

## DISCUSSION

### I. *Statutory Scheme*

■ The Legislature has developed a comprehensive statutory scheme governing the suspension and expulsion of students. Education Code[2] section 48900 states a student may be "suspended from school or recommended for expulsion" for committing one of 18 identified offenses.[3] Three other statutes provide additional grounds for expulsion: section 48900.2 ("sexual harassment"); section 48900.3 ("hate violence"); and section 48900.4 ("harassment, threats, or intimidation").) These three statutes, together with section 48900, establish the exclusive grounds for which a student may be suspended or expelled. (§ 48900; see *Slayton v. Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 549 [207 Cal.Rptr. 705].)

■ Another statutory provision, section 48918, sets forth mandatory procedures that a school district must follow before the district may expel a student who has committed one of these identified expulsion offenses. These required procedures are detailed and extensive. Every student is entitled to a hearing to "be held within 30 schooldays after the date the principal or superintendent of schools determines that the pupil has committed any of the acts" permitting expulsion. (§ 48918, subd. (a).) At the hearing, the school district must permit the student and parent to appear, be represented by legal

---

[2] All further undesignated statutory references are to the Education Code.

[3] These offenses are: "(a) (1) Caused, attempted to cause, or threatened to cause physical injury to another person [or] [¶] (2) Willfully used force or violence upon the person of another, except in self-defense. [¶] (b) Possessed, sold, or otherwise furnished any firearm, knife, explosive, or other dangerous object [with certain specified exceptions]. [¶] (c) Unlawfully possessed, used, sold, or otherwise furnished, or been under the influence of, any controlled substance . . . , an alcoholic beverage, or an intoxicant of any kind. [¶] (d) Unlawfully offered, arranged, or negotiated to sell any controlled substance . . . , an alcoholic beverage, or an intoxicant of any kind, and either sold, delivered, or otherwise furnished [these items] . . . . [¶] (e) Committed or attempted to commit robbery or extortion. [¶] (f) Caused or attempted to cause damage to school property or private property. [¶] (g) Stolen or attempted to steal school property or private property. [¶] (h) Possessed or used tobacco, or any products containing tobacco or nicotine products . . . . [¶] (i) Committed an obscene act or engaged in habitual profanity or vulgarity. [¶] (j) Unlawfully possessed or unlawfully offered, arranged, or negotiated to sell any drug paraphernalia . . . . [¶] (k) Disrupted school activities or otherwise willfully defied the valid authority of [school personnel]. [¶] (l) Knowingly received stolen school property or private property. [¶] (m) Possessed an imitation firearm. As used in this section, 'imitation firearm' means a replica of a firearm that is so substantially similar in physical properties to an existing firearm as to lead a reasonable person to conclude that the replica is a firearm. [¶] (n) Committed or attempted to commit a sexual assault . . . or committed a sexual battery . . . . [¶] (o) Harassed, threatened, or intimidated a pupil who is a . . . witness [in certain proceedings]. [¶] (p) Unlawfully offered, arranged to sell, negotiated to sell, or sold the prescription drug Soma. [¶] (q) Engaged in, or attempted to engage in, hazing . . . ." (§ 48900, subds. (a)–(q).)

counsel or a nonattorney adviser, obtain copies of all documents to be presented, and present oral and documentary evidence. (§ 48918, subd. (b)(5).) The school district must provide written notice at least 10 calendar days before the hearing, and the notice shall include: (1) the date and place of the hearing; (2) a statement of the specific facts and charges upon which the proposed expulsion is based; (3) a copy of the disciplinary rules of the district that relate to the alleged violation; (4) a notice of the parent/student obligations regarding the consequences of expulsion; (5) notice of the opportunity for the student and parent to appear in person and to be represented by legal counsel or a nonattorney adviser; and (6) notice of the right to inspect and produce evidence. (§ 48918, subd. (b).) The administrative panel may issue subpoenas at the request of the school superintendent or the pupil. (§ 48918, subd. (i).) A record of the hearing must be maintained. (§ 48918, subd. (k).)

■ The governing school board is the entity charged with conducting the expulsion hearing. (§ 48918, subd. (c).) However, the governing school board may delegate the initial hearing function to "an impartial administrative panel of three or more certificated persons, none of whom is a member of the board or employed on the staff of the school in which the pupil is enrolled." (§ 48918, subd. (d).) After the hearing, the hearing panel must determine whether to recommend the expulsion of the pupil to the governing board. (§ 48918, subd. (e).) If the panel recommends expulsion, supporting factual findings must be prepared and submitted to the governing board, and those findings must be based on the evidence presented at the hearing. (§ 48918, subd. (f).)

The school board then must hold a hearing to determine whether it accepts the hearing panel's recommendation for expulsion. (§ 48918, subd. (j).) The school board must base this conclusion on the hearing panel's factual findings and/or on the results of any supplementary hearing. (*Ibid.*) Final action to expel a student must be conducted at a public hearing, and the governing board must thereafter provide written notice to the parent/guardian of the right to appeal the expulsion to the county board of education. (*Ibid.*)

■ In addition to setting forth the procedures for conducting the expulsion hearing, the Legislature specified the circumstances for triggering an expulsion hearing and the findings that must be made at these hearings. These circumstances—grouped in three primary categories—are set forth in section 48915.

First, with respect to certain very serious offenses, the Legislature provided that "the principal or superintendent of schools *shall* . . . recommend expulsion of a pupil that he or she determines has committed any of the

following acts at school or at a school activity off school grounds: [¶] (1) Possessing, selling or otherwise furnishing a firearm . . . . [¶] (2) Brandishing a knife at another person. [¶] (3) Unlawfully selling a controlled substance . . . . [¶] (4) Committing or attempting to commit a sexual assault . . . or committing a sexual battery. . . . [¶] [or] (5) Possession of an explosive." (§ 48915, subd. (c), italics added.) If the governing board finds a student committed one of these offenses, the school board must order expulsion. (§ 48915, subd. (c).) These offenses will hereafter be referred to as the "Most Serious Offenses."

■ Second, with respect to the next level of expulsion offenses, the Legislature provided that "the principal or the superintendent of schools *shall* recommend the expulsion of a pupil . . . , *unless the principal or superintendent finds that expulsion is inappropriate, due to the particular circumstance* . . . ." (§ 48915, subd. (a), italics added.) The offenses to which this provision applies are: (1) causing serious physical injury to another person, except in self-defense; (2) possession of any knife or other dangerous object of no reasonable use to the pupil; and (3) unlawful possession of any controlled substance (with certain exceptions for less than one ounce of marijuana). (§ 48915, subd. (a).) With respect to these offenses, a school board cannot expel a student unless it also finds one of the following: (1) "[o]ther means of correction are not feasible or have repeatedly failed to bring about proper conduct"; or (2) "[d]ue to the nature of the act, the presence of the pupil causes a continuing danger to the physical safety of the pupil or others." (§ 48915, subd. (b)(1), (2).)

■ Third, with respect to the remaining statutory expulsion offenses, the Legislature did not provide a mandatory or presumptive referral requirement, and instead stated: "Upon recommendation by the principal, superintendent of schools, or by a hearing officer or administrative panel . . . , the governing board may order a pupil expelled upon finding that the pupil violated [the identified statutory expulsion ground]." (§ 48915, subd. (e).) With respect to these offenses, a student cannot be expelled unless it is found that: (1) "other means of correction are not feasible or have repeatedly failed to bring about proper conduct"; or (2) "due to the nature of the violation, the presence of the pupil causes a continuing danger to the physical safety of the pupil or others." (§ 48915, subd. (e)(1), (2).) Additionally, with respect to certain of these offenses, an expulsion may be ordered only if the student committed the act at school or during a school activity. (See § 48915, subd. (e).)

## II. *District Regulations*

■ To implement these statutes, the District promulgated Administrative Procedure Rule No. 6295 governing expulsions in District schools (Rule

6295).[4] Under Rule 6295, the District gave its Placement and Appeal Office the responsibility for convening an Expulsion Review Panel to conduct hearings on expulsion referrals and to make recommendations to the Board. (Rule 6295, Part C.12.c.) The Expulsion Review Panel must be composed of impartial "certificated managers and school vice principals." (*Ibid.*)

■ Rule 6295, Part C.3, states that a student "may not be suspended from school or recommended for expulsion" unless "the superintendent or principal of the school . . . determines that the student has violated one or more of the following causes . . . ." As is relevant here, those identified causes are essentially identical to the causes identified in the Education Code. (See §§ 48900, subds. (a)–(q), 48900.2, 48900.3, 48900.4.)

■ Rule 6295, Part C.12, then sets forth the procedural requirements for the expulsion hearing process. These requirements mirror the statutory requirements contained in section 48918, mandating that students be given extensive procedural rights, including the right to written notice of all charges, the right to an oral hearing during which evidence is presented, the right to counsel, the right to have the decision based on the evidence presented, the right to a neutral factfinder, and the right to appeal.

Rule 6295, Parts C.6, C.7, and C.8, then specify the circumstances under which a principal *must* refer a student to the Expulsion Review Panel for a hearing. These provisions are part of the District's "zero tolerance" policies. *Part C.6* provides that "The school principal or designee *must* immediately suspend and recommend for expulsion a pupil that he or she determines has committed any of the following acts at school or at a school activity off school grounds . . . ." (Italics added.) The listed acts are identical to the Most Serious Offenses in the Education Code. (§ 48915, subd. (c).) *Part C.7* provides that: "the school principal or designee *shall suspend and recommend for expulsion all students*" who: (1) "possess a firearm, knife, explosive or any other dangerous object in school"; (2) "are involved in three or more incidents of fighting that inflicts injury or trespassing within one year"; (3) furnish, sell, or possess an amount of an identified controlled substance determined to be for more than personal use; (4) commit a third violation involving "the use and possession of any dangerous or prohibited substance, other than tobacco"; or (5) commit a "fourth violation of the policy prohibiting tobacco use." (Italics added.) *Part C.8* provides that "The school principal or designee *shall suspend and recommend for expulsion* a student who has committed any of the following acts at school or at a school activity off

---

[4] Rule 6295 is 24 pages in length, and is divided into "Parts." All undesignated references to Parts will be to portions of Rule 6295 as amended in 2003. Various versions of Rule 6295 were submitted at trial. We use the 2003 version because it was the most recent version and appeared to be the one the parties and court relied on during trial. For purposes of our analysis, there is no substantive difference in the different versions, except as noted in footnote 5.

school grounds . . . ."[5] (Italics added.) The offenses listed in this section are the same as those listed in section 48915, subdivision (a).

■ For purposes of this appeal, the critical point is that the expulsion recommendation requirements in Rule 6295, Parts C.7 and C.8, are broader than those identified in the Education Code. Section 48915, subdivisions (a) and (e) provide the school principal with a level of discretion to decide not to refer a student for an expulsion hearing if the principal subjectively believes the particular circumstances do not warrant an expulsion even though the principal has found the student did commit the offense. Parts C.7 and C.8 eliminate this discretion and *require* the principal to recommend a student for an expulsion hearing if the principal finds the student committed the expulsion offense. Despite this difference, the Education Code and the District's administrative regulations are consistent in that the District regulations do not necessarily require an expulsion for these offenses—the requirement is only that the matter be heard by an objective hearing panel.

### III. *Analysis*

#### A. *Statutory Contentions*

##### 1. *Governing Review Standards*

The trial court found Rule 6295 facially violates the Education Code because it: (1) permits expulsions in two circumstances that are not permitted under the state statutes; and (2) eliminates a school principal's statutory discretion to decide not to refer for an expulsion hearing a student who has committed an expulsion offense.

■ In evaluating the propriety of these findings, we independently determine the meaning of the relevant statutes and ascertain the Legislature's intent. In so doing, we " 'consider first the words of the statute because they are generally the most reliable indicator of legislative intent.' " (*Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 432 [134 Cal.Rptr.2d 124].) We must construe the language " ' "in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." ' " (*Ibid.*) Statutory construction rules "are not to be rigidly applied in isolation . . . . [¶] The correct construction of a statute is not divorced from

---

[5] In 2001, Rule 6295, Part C.8 contained additional language giving the principal or superintendent discretion to find the expulsion was inappropriate, but that language was deleted in 2003.

its context." (*Ibid.*; see *Fremont Union High Sch. Dist. v. Santa Clara County Bd. of Education* (1991) 235 Cal.App.3d 1182, 1186 [286 Cal.Rptr. 915].)

We must also construe the statutes keeping in mind the Legislature's expressed intent to provide each school district with broad discretion and flexibility to accomplish its educational mission. A school district "may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established." (§ 35160.) This statute was intended "to give school districts . . . broad authority to carry on activities and programs . . . which, in the determination of the governing board of the school district . . . are necessary or desirable in meeting their needs . . . ." (§ 35160.1, subd. (b).) Thus, section 35160 must "be liberally construed to effect this objective." (§ 35160.1, subd. (b).) The Legislature recognized that "school districts . . . have diverse needs unique to their individual communities and programs. . . . [I]n addressing their needs, . . . school districts . . . should have the flexibility to create their own unique solutions." (§ 35160.1, subd. (a); see *San Rafael Elementary School Dist. v. State Bd. of Education* (1999) 73 Cal.App.4th 1018, 1027 [87 Cal.Rptr.2d 67].)

In applying the correct review principles, it is additionally relevant that T.H. did not challenge the District's regulations as applied to her own case. Instead, T.H.'s statutory and constitutional challenges were facial challenges to the District's regulations. (See *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 192–193 [94 Cal.Rptr.2d 453].) A facial challenge is " 'the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists under which the [law] would be valid.*' " (*Id.* at p. 193.) The moving party must show that the challenged statutes or regulations " ' "inevitably pose a present total and fatal conflict" ' " with applicable prohibitions. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

### 2. *Mandatory Versus Discretionary Reference*

The trial court found the District's regulations violate state law because they eliminate a school principal's statutory discretion to decide not to recommend a student for an expulsion hearing.

Absent a specific statutory limitation, a school district "is free to act as it sees fit within the purposes for which it was established." (*Las Virgenes Educators Assn. v. Las Virgenes Unified School Dist.* (2001) 86 Cal.App.4th 1, 12 [102 Cal.Rptr.2d 901]; see § 35160; *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1017–1019 [34 Cal.Rptr.2d 108].)

"Courts should give substantial deference to the decisions of local school districts and boards within the scope of their broad discretion, and should intervene only in clear cases of abuse of discretion" where the acts are clearly inconsistent with state law or constitutional principles. (*Dawson, supra,* 28 Cal.App.4th at p. 1019.)

Although the District's expulsion requirements are different from the statutory requirements in that they eliminate a school principal's discretion to decide not to recommend a student for an expulsion hearing, this difference does not mean the regulations are inconsistent with the applicable statutes. There are no provisions in the Education Code *requiring* a school district to provide a school principal with the authority to dismiss an expulsion charge if the principal has found the student has committed the expulsion offense. Instead the statutes *require* that under certain situations a principal *must* refer ("recommend") a student to the school board (or designated hearing panel) for an expulsion hearing. (§ 48915, subd. (c).) A requirement that a school district must comply with a minimum requirement (mandatory recommendation) for certain offenses is not the same as stating that the district may not require this minimum for other offenses.

A different situation would be presented if the District's stricter recommendation procedures infringed on a student's statutory rights to an objective and fair expulsion procedure. (See *Woodbury v. Brown-Dempsey, supra,* 108 Cal.App.4th at pp. 432–433 [school district could not make a blanket rule eliminating an expulsion hearing panel's subpoena powers].) But this is not the situation with respect to the District's policies. Under the District's rules, a student who allegedly commits a zero tolerance expulsion offense remains entitled to expansive procedural protections set forth in the statutes, and the hearing panel retains the full discretion to decide not to order an expulsion and to determine that another disciplinary action is more suitable.[6] Eliminating a school principal's discretion to unilaterally reject an expulsion remedy at the outset of the process does not affect a student's entitlement to these expansive procedural protections or diminish a student's rights to fully challenge the expulsion charge.

Moreover, the District's mandatory recommendation requirements do not preclude the school principal from expressing his or her own views as to whether expulsion is appropriate in a particular case. The District regulations specifically *require* a principal to consult with a Placement and Appeal

---

[6] T.H.'s assertion that the expulsion panel's purpose "is simply to determine whether the offense was committed" and the panel does not consider "the circumstances surrounding the event" is not supported by the cited record references or by applicable law. The only exception to this discretionary authority at the hearing level is the Most Serious Offenses, for which both the state statutes and District rules require an expulsion. (§ 48915, subd. (c); Rule 6295, Part C.6.)

Office legal specialist, and the regulations provide the principal and the legal specialist with the discretion to reach a joint decision that the incident was "not as serious as [it] first appeared" and that the incident may be handled at the school level. (Rule 6295, Part D.1.e.) Additionally, the regulations permit a principal to voluntarily testify at the expulsion hearing, and the hearing panel may subpoena the principal to provide this testimony. A school principal further retains the discretion to determine a student did not in fact commit the alleged expulsion offense, and therefore to determine that any referral would be unwarranted.

■ In light of this administrative scheme, we do not share the trial court's concerns that the District's rules have the "improper" effect of "diminish[ing]" or "destroy[ing]" the value of the principal's "true" evaluation of the situation. A principal's "true" evaluation can be considered in the hearing process, and there is no statutory requirement that an expulsion turn on a principal's subjective feelings about a particular expulsion charge. Although the Education Code and District regulations use the verb "recommend" to describe the principal's role in referring a student to the governing school board (or its designated hearing panel), when viewed in context of the statutory and regulatory scheme, this term does not suggest that a principal is required to support—at the hearing level—the expulsion remedy in the particular case. Under its broad statutory authority, a school district has the discretion to determine that the entity best suited to evaluating the circumstances underlying an expulsion charge is a three-person hearing panel rather than the school principal.

In considering the propriety of the District's challenged regulations, it is further relevant that the procedures serve an important and legitimate educational goal—ensuring that all students in the District will be treated in a consistent manner. As explained by District's counsel in the proceedings below, the mandatory reference policy was instituted after the District (which governs approximately 170 schools) found that some school principals were referring every zero tolerance offense to an expulsion hearing panel, whereas at other schools the principal would impose less strict punishment for the same offense. Given this disparate treatment, the District concluded that fairness and administrative efficiency required that all zero tolerance offenses be reported to the Expulsion Review Panel, and the panel would then have the discretion to hear all the relevant evidence, and based on the evidence, determine the appropriate punishment and apply the rules in an objective and equal manner. To the extent that a school district promulgates a procedural rule relating to discipline that does not interfere with the student's statutory rights or otherwise conflict with the Education Code, that rule should be upheld.

In seeking to show an inconsistency between the District's regulations and the Education Code, T.H. contends the Legislature's deliberate creation of three different categories of "recommendation" procedures (see § 48915, subds. (a), (c), (e)) shows the Legislature must have intended to provide students who commit the non-Most Serious Offenses with an additional level of procedural protection by requiring a discretionary review by the school principal. T.H. argues that eliminating a principal's discretionary authority to dismiss an expulsion charge will thus necessarily conflict with this legislative intent. This interpretation requires a logical leap that is not supported in the statutory language. The Legislature's creation of a mandatory duty to refer a student for an expulsion hearing with respect to certain very serious offenses does not mean the Legislature was intending to mandate that school districts provide students who commit less serious expulsion offenses with an additional level of due process review by a particular administrator.

In a related argument, T.H. contends the Legislature must have intended to require a school district to give a school principal the discretion to impose a lesser punishment because the principal "has the most knowledge regarding the school site, the circumstances surrounding the offense, and the student who allegedly committed the offense." T.H. does not cite any legal authority to support this argument. Moreover, the argument is belied by the statutory language which gives this discretion not only to the principal but also to the school superintendent. (§ 48915, subds. (a), (e).) Because the Legislature provided both individuals the authority to exercise discretion in the non-Most Serious Offenses, we cannot infer that the purpose of the statutory discretion was to ensure a review by the administrator most knowledgeable about the situation. A superintendent of schools, such as the District's superintendent who is responsible for overseeing 170 schools, will generally not have first-hand information about the circumstances leading to each expulsion offense. Additionally, as we have noted, the District's regulations do permit, and in fact require, a school principal to discuss the expulsion referrals with the Placement and Appeal Office, and allow a principal to testify to any extenuating factors or other matters that would make the expulsion remedy inappropriate under the circumstances of the case.

Section 48900, subdivision (u), relied upon by T.H, is also unhelpful to her position. Section 48900, subdivision (u) states "[a] superintendent or principal may use his or her discretion to provide alternatives to suspension or expulsion, including, but not limited to, counseling and an anger management program, for a pupil subject to discipline under this section." T.H. argues that if a principal is forced to recommend expulsion for zero tolerance offenses, then this subdivision is "rendered meaningless" because no principal would be permitted to employ the alternative disciplinary techniques identified in the statute. The argument is unpersuasive because the District has not adopted a zero tolerance policy with respect to all expulsion offenses; the District has

applied that policy only to certain offenses that it considers to be the most serious in its schools. Thus, with respect to these other offenses, a principal retains the full discretion to consider these alternate disciplinary measures in a case where it finds such measures to be appropriate. Moreover, there is nothing in the District's regulations prohibiting the Expulsion Review Panel from applying these alternative disciplinary techniques in lieu of an expulsion order in an appropriate case.[7]

We conclude T.H. failed to show the District's challenged expulsion recommendation regulations (Rule 6295, Parts C.7 and C.8) are inconsistent with state law.

### 3. *Possession of a Toy Firearm and Trespassing*

The trial court also found the District regulations violate state law because they permit expulsions in two circumstances—possession of a "toy" firearm and "trespassing"—not permitted under the state statutes. This finding was erroneous because there was no showing the District regulations permit the District to expel a student for these offenses if the offense does not meet the definition of an expulsion offense under the state statutes.

Rule 6295, Part C.3, provides, "A student may not be suspended from school or recommended for expulsion unless the superintendent or principal of the school in which the student is enrolled determines the student has violated one or more of the following causes . . . ." Part C.3 then identifies 17 grounds for expulsion, which are essentially consistent with the grounds for expulsion set forth in section 48900 and the related statutes. Neither "trespassing" nor "possession of a toy firearm" is listed in Part C.3. In the proceedings below, District's counsel acknowledged that the District would not expel a student for an offense that is not identified in the state statutes permitting expulsion. Accordingly, absent any evidence to the contrary, we are required to presume that the District will properly interpret its own regulations, and will not expel a student unless the conduct is identified in Part C.3. (See Evid. Code, § 664.)

---

[7] To support her reading of the relevant statutes, T.H. also relies on various excerpts from legislative history documents provided by the Legislative Intent Service. We find none of the cited passages supports her position. T.H., for example, relies on a document entitled "Summary of Senate Bill 813," a bill proposing a former version of the expulsion statutes. The summary states one of the bill's "overall" features is to "deliniate" authority and responsibilities to various parties, including students, teachers, school administrators, and local boards, and stating that some bill provisions are "mandated" and others are "optional." This document was inadmissible because there was no foundation showing when the document was prepared, who authored the document, or that any legislator saw the document before passage of the bill. (See *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 487 [17 Cal.Rptr.3d 88].) In any event, there is no reasonable connection between the document's general comments relied upon by T.H. and her specific assertions in this case.

██ In arguing for a different interpretation, T.H. contends the District may expel a student for trespassing because this offense is listed in another part of the District's administrative regulations concerning the procedures for referring a student to the Expulsion Review Panel. (Rule 6295, Part C.7.) However, because there is no showing the District considers this reference to trespassing to constitute an independent basis to expel a student, we cannot assume the District would expel a student based solely on this ground. To the extent a student "trespasses" on school property, and then causes property damage or personal injury, the District rules specifically permit expulsion for these offenses (Rule 6295, Parts C.3.a and f), and these grounds for expulsion are fully consistent with the Education Code (§ 49800, subds. (a), (f)).

With respect to "toy" firearm possession, T.H. argues the District may expel a student for this offense because the phrase "toy/imitation firearm" is listed on a "Report on Suspension" form that a principal/administrator completes to notify parents *after* a student has committed an expulsion offense. However, the District's administrative regulations do not identify possession of a "toy" firearm as grounds for expulsion (Part C.3); instead the regulations identify this offense as possession of "an imitation firearm" (see Part C.3.p), which is the same description of the offense contained in section 48900, subdivision (m). Because there is no showing the District considers the reference to a "toy" firearm in its form notice (sent to a parent after a student has committed an expulsion offense) to be any different from the statutory definition (an "imitation firearm"), the notice does not violate the Education Code on the record before us.

The court erred in finding the District's administrative regulations are facially invalid because of the District's reference to trespassing in Rule 6295, Part C.7, and its reference to "toy" firearm possession in a letter sent home to parents.

### B. *Constitutional Challenges*

The District additionally contends the trial court erred in determining the District's expulsion procedures violate a student's federal and state constitutional rights. T.H. counters that the District's rules and regulations are unconstitutional because they do not provide a student with: (1) prior notice of all "zero tolerance" offenses; (2) notice of the fact the principal has less referral discretion than is provided under the statutes; and (3) notice that trespassing and/or toy firearm possession can be a basis for expulsion. In support of these constitutional due process arguments, T.H. emphasizes that public education is a fundamental right under the California Constitution (see *Serrano v. Priest* (1971) 5 Cal.3d 584, 604–610 [96 Cal.Rptr. 601, 487 P.2d

1241]), and that a student charged with committing an expulsion offense is entitled to due process under the federal and state Constitutions. (See *Goss v. Lopez* (1975) 419 U.S. 565, 574 [42 L.Ed.2d 725, 95 S.Ct. 729].) Although we agree with these general propositions, they do not support T.H.'s due process arguments in this case.

First, T.H. contends the District's expulsion regulations violate a student's due process rights because a form sent home to parents titled "Notice of Zero Tolerance Policy" does not identify every single offense for which expulsion is possible. However, the record does not show this document is the only notice that a parent/student receives before a student is expelled. To the contrary, as in T.H.'s case, the District provides repeated notices to parents and students who are subject to expulsion. Further, there is no authority supporting the proposition that individuals have a due process right to be told in advance of every possible specific offense that could potentially subject them to punishment. Instead, individuals have the right to procedural protections once an allegation is made against them, and the District's regulations provide these required protections to its students.[8]

T.H. next argues the District regulations violate a student's due process rights because a student is never told that the District's policies remove a school principal's statutory discretion to decide whether to recommend expulsion for zero tolerance offenses. This argument is without merit. There is no authority for the proposition that a student is constitutionally entitled to have notice of the scope of a principal's authority vis-à-vis the governing school board. Further, as we have discussed, the District regulations provide a student with the right to a full range of statutory protections, and these rights are not diminished merely because a school principal does not have the discretion to dismiss the matter at the outset of the process.

T.H. next argues that the District's policies violate due process because the District permits the principal/superintendent to recommend a student for expulsion "for offenses that are not even included in the discipline provisions of the Education Code," i.e., "trespassing" or the possession of a "toy" firearm. However, as we have concluded, on the record before us there is no showing that the District will expel for these offenses under its own policies. To the extent there are some inconsistencies within the District's rules with respect to these offenses, these inconsistencies do not create an inevitable due process violation. Thus, T.H. cannot prevail on a facial challenge on this issue.

---

[8] To the extent a student believes he or she did not receive proper notice in a particular case, that student may bring an "as applied" challenge to the expulsion order. In this case, it is conceded that T.H. and her mother had prior written notice that "repeated acts of fighting" would subject her to expulsion, and that T.H. had been warned on numerous occasions that her continued misconduct would subject her to expulsion.

## DISPOSITION

Judgment reversed. T.H. to pay District's costs on appeal.

Benke, Acting P. J., and Huffman, J., concurred.