Filed 3/9/16  Pierce v. Regents of the University of California CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| SAMUEL PIERCE, | B262545 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC548635) |
| v. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert O'Brien and Stephanie Bowick, Judges.  Affirmed.

Samuel Pierce, in pro. per., for Plaintiff and Appellant

Munger, Tolles and Olson, Bradley S. Phillips and Laura D. Smolowe; Office of the General Counsel, University of California, Charles F. Robinson, Karen J. Petrulakis and Margaret L. Wu, for Defendant and Respondent.

_____

Samuel Pierce filed a complaint against the Regents of the University of California alleging he had been denied admission to The David Geffen School of Medicine at UCLA on the basis of his race, in violation of Article 1, Section 31 of the California Constitution. Regents demurred, arguing that the allegations in the complaint demonstrated Pierce was unqualified to attend the medical school, and therefore suffered no injury as the result of any discriminatory conduct. The court sustained the demurrer without leave to amend.

On appeal, Pierce argues the trial court erred in sustaining the demurrer because: (1) the complaint adequately alleges he was denied admission to the medical school as the result of a Spanish language proficiency requirement that operates as an unlawful ethnic preference; (2) the pleaded facts do not show he lacked the qualifications to attend the medical school. We affirm, concluding that the school's alleged Spanish language requirement does not, on its face, qualify as an unlawful racial or ethnic preference.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Summary of the Complaint*

Samuel Pierce, acting in *propria persona*, filed a complaint against the Regents of the University of California (Regents) arising from his denial of admission to The David Geffen School of Medicine at UCLA (the medical school). The operative pleading alleged Pierce had graduated from the University of Pennsylvania with a 3.52 grade point average. It further alleged Pierce had received the highest possible score on the science sections of the "Medical College Admission Test" (MCAT), and that his composite MCAT score placed him in the top 99.8 percentile of all test takers. According to Pierce's pleading, these "objective" factors demonstrated there was no reasonable basis to conclude he was any less qualified than other students who had been accepted into the school.

The complaint alleged that in February of 2011, the medical school had sent Pierce an email inviting him to "an interview in support of . . . his application." When Pierce arrived at the interview, administrators handed him a "form which asked whether [he]

2

was proficient in the Spanish language." The form also indicated that Spanish proficiency was a "mandatory" requirement for admission. Pierce was then told his interview would be "scored qualitatively," and that the school would offer admission to the students who received the highest interview scores. Pierce alleged he performed satisfactorily during his interview, asserting that his answers "provided no basis for [the medical school] to reject [him] for admission nor to conclude that [he] was in any way less capable than [other] individuals" who had interviewed that day. Despite his "unsurpassed…objective qualifications" and satisfactory interview performance, Pierce received a letter in August of 2011 informing him he had not been accepted into the medical school.

On February 13, 2013, Pierce, then a student at UCLA's law school, met with the university chancellor, Gene Block, to discuss his medical school application. Pierce informed Block he believed the medical school's decision to reject his application "was a probable deprivation of his rights under the California Constitution, Article 1, Section 31." In support of this allegation, Pierce explained to Block that UCLA law professor Richard Sander had conducted research showing that "persons responsible for admission to degree programs offered at [UCLA] [were] using race, ethnicity, sex [and] national origin as pivotal factors in the decision of whether to admit an individual, through a scheme…utilizing stereotypes and prejudices with respect to an individual applicant's name." Pierce then "demanded that Chancellor Block . . . allow him to articulate [sic] into the [medical] program. Chancellor Block "manifested agreement," telling Pierce he "would be a doctor." During a subsequent meeting with UCLA's associate vice chancellor, Pierce insisted that the medical school comply with Block's promise of admission. The medical school's admissions committee rejected the demand, explaining that Chancellor Block did not have authority to make such decisions.

Pierce's complaint alleged two causes of action related to his denial of admission. The first claim, captioned "Specific Performance," alleged the medical school was "obligated to" admit Pierce based on the statements Block had made to him during their February meeting. Pierce asserted that Block's statements constituted an enforceable

3

agreement granting him admission to the medical school and that defendant had "refused to tender the agreed performance."

The second claim, captioned "Deprivation of rights under the California Constitution, Article 1, Section 31," alleged that the medical school had "operated the admissions process" in a manner that provided "preferential treatment" to persons of "Black" and "Hispanic ethnicity." Specifically, admissions officers relied on "stereotypes about an individual's name, address, visual appearance, family names, place of birth and other biographical data…to gauge the national origin of [applicants]."

Pierce alleged several factors demonstrated the medical school utilized racial preferences in its admissions process. First, he asserted professor Sander's statistical analysis of UCLA admissions data showed "persons of Asian or White ethnicities are admitted under a different standard than persons of Hispanic or Black ethnicity," and that "an individual who is applying to [UCLA] will have a dramatically less probability of obtaining admission if his or her application reflects that he or she is White or Asian than if the otherwise exactly similar application reflects that he or she is Black or Hispanic." Second, Pierce alleged the medical school's Spanish language proficiency requirement showed that "persons of Hispanic ethnicity definitionally receive[d] preferential treatment." According to Pierce, the language requirement was "not necessary for study in the [medical program]," had been adopted without "quantitative study" and served solely to favor Hispanic applicants. Third, Pierce contended "the average [MCAT] score of [students] enrolled [in the medical school] of White or Asian ethnicity [wa]s higher than the average score of [students] of Black or Hispanic ethnicity," suggesting that Black and Hispanic candidates were evaluated under different testing criteria.

Pierce further alleged that the medical school's reliance on racial preferences was "the proximate cause and the cause in fact of the denial of [his] admission." Pierce contended there was "no articulable basis to argue that any of the students . . . admitted [into the medical school]" were "more qualified" than he, and that the school had "no reason to conclude based on academic record, volunteer work and other extracurricular activity, and/or personal character that other persons would be more suitable for the

4

[medical school]." As a remedy, Pierce sought an "order prohibiting [the medical school] from denying [him] admission[.]"

### B. *Regents's Demurrer*

Regents filed a demurrer arguing that the allegations in the complaint failed to state a valid claim. On the first cause of action, Regents argued that "specific performance" was not "cognizable as a stand-alone claim," but rather was an "equitable remedy." It also argued that even if construed as "a claim for breach of oral contract seeking specific performance of a remedy," the claim failed as a matter of law because: (1) the statements Block had allegedly made to Pierce were "too vague [and indefinite] to constitute a binding agreement"; (2) Pierce had alleged no facts demonstrating Block "had the authority to enter into an admissions contract"; (3) Pierce had failed to "allege adequate legal consideration" for the promise of admission; and (4) "specific performance" (i.e., an order requiring admission) was not a proper remedy.

On the second cause of action, Regents argued that Pierce lacked standing to assert his discrimination claim "because he fail[ed] to allege facts showing he was qualified for admission into the [medical school]." More specifically, Regents argued the pleading provided no basis to conclude he was "at least qualified for the program" because: (1) Pierce had not alleged his "GPA was . . . in the competitive range for admission"; (2) he had "admit[ted] he does not know how he was scored on his interview"; and (3) he had failed to allege he spoke sufficient Spanish to meet the school's purported "Spanish proficiency criterion."

Regents also argued that, to the extent Pierce was attempting to assert a "citizen suit" challenging the medical school's admission policies on their face, he had pleaded no facts beyond "conclusory allegations" demonstrating that the school utilized any form of racial preference. Regents contended that even if Pierce was able to prove the school required proficiency in Spanish as a condition of admission, such a policy did not qualify as "a racial classification" because it applied to all persons regardless of their race or ethnicity. Regents also argued that the statistical evidence described in the pleading was

5

insufficient to raise an inference that the medical school had a policy of utilizing racial preferences.

Pierce's opposition focused primarily on his contract claim, asserting that whether Chancellor Block had authority to admit him into the medical school and whether Block's statements constituted an enforceable agreement were questions of fact not suitable for demurrer. Pierce also argued he had standing to challenge his admission decision on the basis of racial discrimination because the complaint specifically alleged his MCAT scores, academic record and extracurricular activities were "vastly superior to typical entering students in UCLA's medical school."

Following a hearing, the court issued a minute order sustaining the demurrer "without leave to amend on the grounds stated in the demurrer."[1] On January 9, 2015, the court entered a judgment of dismissal.

## DISCUSSION

### A. Standard of Review

We review de novo the trial court's judgment sustaining the demurrer without leave to amend. (See *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] . . . [W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Kirwan*).) "[S]uch a showing need not be made in the trial court so long as it is made to the reviewing court." (*Careau & Co. v. Security*

---

[1] Pierce did not include a transcript of the demurrer hearing in the record.

*Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1386; see also Code Civ. Proc., § 472c, subd. (a).) "[T]he judgment will be affirmed if it is proper on any grounds raised in the motion even if the court did not rely on those grounds." (*Pang v. Beverly Hospital, Inc*. (2000) 79 Cal.App.4th 986, 989.)

### B. *Pierce Has Abandoned His Claim for Specific Performance*

Pierce's opening appellate brief contains no argument regarding his specific performance claim, which alleges that Regents breached Chancellor Block's oral promise that Pierce would be granted admission to the medical school. In its respondent's brief, Regents argues that Pierce's failure to address his specific performance claim constitutes an abandonment of the claim. Pierce, who did not file a reply brief, has elected not to respond to this argument.[2] We therefore deem the specific performance claim to be abandoned. (See *Ram v. Onewest Bank* (2015) 234 Cal.App.4th 1, 9 fn. 2 [on appeal from a judgment sustaining a demurrer, an appellant's failure to advance arguments in connection with a cause of action set forth in the complaint constitutes an abandonment of that claim]; *Bagley v. International Harvester Co*. (1949) 91 Cal.App.2d 922, 926; Cf. *In re Sade C*. (1996) 13 Cal.4th 952, 994 [because an "appealed-from judgment is presumed correct," issues not raised in an appellant's brief are deemed waived or abandoned].)

### C. *On its Face, the Medical School's Alleged Spanish Language Requirement Does Not Violate Article 1, Section 31 of the California Constitution*

In his opening appellate brief, Pierce articulated two reasons why the trial court erred in sustaining Regents's demurrer to his claim alleging that the medical school utilized unlawful racial or ethnic preferences in the admissions process. First, he argued that the Spanish language proficiency requirement described in the complaint was, in itself, an unlawful racial preference that favors Hispanics. Second, he contended his complaint adequately alleges that "[a]part from the Spanish requirement for admission,"

---

**2** Pierce also elected not to present any argument on his specific performance claim during oral argument before this court.

medical school personnel "effectuat[ed]" additional "racial preferences for Blacks and Hispanics" that resulted in his denial of admission.**3**

During oral argument before this court, however, Pierce clarified his discrimination claim is now predicated solely on the allegation that the medical school denied him admission because he is not proficient in Spanish. Pierce further clarified he is claiming the Spanish language requirement is "inextricably intertwined with race," and that "putting it into operation" was, in itself, an unlawful racial preference favoring Hispanics. His complaint contains similar statements, alleging the language requirement "definitionally" provides Hispanic applicants "preferential treatment." Based on his statements at oral argument and within his complaint, we understand Pierce to be claiming that the school's alleged Spanish language proficiency requirement is unconstitutional on its face because it constitutes a racial or ethnic preference in violation of Section 31 of Article I of the California Constitution.

"A facial challenge to the constitutional validity of a statute[,] . . . ordinance [or policy] considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 (*Tobe*).) "A facial challenge is '"the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [provision] would be valid."' [Citation.]" (*T.H. v. San Diego Unified School Dist.* (2004) 122 Cal.App.4th 1267, 1281.) The moving party "'"cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute…. Rather, [the moving party] must demonstrate that the challenged [action] inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions."' [Citations.]" (*Tobe, supra*, 9 Cal.4th at p. 1084.)

---

**3** We presume this second argument relates to allegations in the complaint asserting that medical school personnel consider each applicant's "race, sex, color, ethnicity, and national origin" in the admissions process, which they determine based on "stereotypes about an individual's name, address, visual appearance, family names, place of birth and other biographical data."

Section 31 of Article I of the California Constitution provides (in relevant part): "The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.'" For the purposes of section 31, the term "'[d]iscriminate'" means "'to make distinctions in treatment; show partiality (in favor of) or prejudice (against)'"; the word "'preferential'" means "'giving preference,' which is 'a giving of priority or advantage to one person . . . over others.' [Citation.]" (*Hi–Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 559.)

The alleged Spanish language proficiency policy set forth in the complaint does not, on its face, violate section 31 because it does not show "partiality," "prejudice" or "preference" to any student on the basis of his or her "race, sex, color, ethnicity or national origin." Rather, the alleged policy distinguishes between candidates based on their ability to speak a certain language. Contrary to Pierce's assertions, persons of Hispanic ethnicity are not treated any more favorably on the face of the policy than persons of non-Hispanic origin: a Hispanic applicant who lacks proficiency in Spanish is no more eligible for admission than a non-Hispanic applicant who lacks such proficiency; similarly, a Hispanic applicant who is proficient in Spanish gains no advantage over a non-Hispanic applicant who is likewise proficient. (See generally *American Civil Rights Foundation v. Berkeley Unified School Dist.* (2009) 172 Cal.App.4th 207, 217-218 (*Berkeley Unified*) [school district policy that considered the racial composition of a student's neighborhood did not violate section 31 because any preference provided "is on the basis of . . . factors relating to the . . . composition of the student's neighborhood . . ., not the student's race. [¶] . . . [¶] White and African-American students from the same neighborhood receive the same diversity rating and the same treatment"].) To the extent Pierce or any other applicant, Hispanic or non-Hispanic, is disfavored by the policy, it has nothing to do with his ethnicity, but rather his inability to speak Spanish.

Pierce has cited no authority suggesting that section 31 categorically prohibits preferences based on an individual's ability to speak a particular language. Although we

9

are aware of no California authority that has addressed the issue, courts in other jurisdictions have consistently concluded that differential treatment predicated on an individual's ability (or inability) to speak a particular language does not, in itself, violate the Equal Protection Clause's prohibition against discrimination based upon race and ethnicity. (See *Soberal-Perez v. Heckler* (2d Cir. 1983) 717 F.2d 36, 41 ["Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis[. Citations.] Nevertheless, the conduct at issue here, the . . . failure to provide forms and services in the Spanish language, does not on its face make any classification with respect to Hispanics as an ethnic group. A classification is implicitly made, but it is on the basis of language, i.e., English-speaking versus non-English-speaking individuals, and not on the basis of race, religion or national origin. Language, by itself, does not identify members of a suspect class"]; *Pemberthy v. Beyer* (3d Cir. 1994) 19 F.3d 857, 870, 872 (*Pemberthy*) ["we are not willing to hold as a matter of law that language-based classifications are always a proxy for race or ethnicity and receive strict scrutiny for that reason"; "linguistic ability is not immutable"]; *United States v Munoz* (5th Cir. 1994) 15 F.3d 395, 399 [although striking juror based on "Spanish-speaking ability" might be "pretext for . . . racial discrimination" under some circumstances, such conduct is not, on its face, categorically prohibited ]; *Broomer v Huntington Union Free School Dist*. (E.D. N.Y., Aug. 13, 2013) Slip Copy 2013 WL 4094924, *7 ["requiring teachers to have dual-language certification[] does not on its face make any racial or national origin classification as the language one speaks is not contingent upon one's race or national origin . . . If plaintiffs were dual-language certified or acquired the requisite certifications, for example, they would be eligible to teach in the dual language program regardless of their race or ethnicity. Likewise, Hispanic teachers who lacked the proper certification would not be eligible to teach in the program"]; Cf. *Bradford v. State of Hawaii* (1994) 846 F.Supp. 1411, 1417 [rejecting claim that "inclusion of Hawaiian terms on the surveyor's exam violate[d] his constitutional rights" because "each person has the same opportunity to study for and to take the surveyor's exam, regardless of that person's national origin or residence"].)

Pierce's claim that a Spanish proficiency requirement violates section 31 appears to be based on the assumption that persons of Hispanic origin necessarily speak Spanish, while persons of non-Hispanic origin do not.  However, Pierce has failed to allege any facts that would support such an assertion, which plainly conflicts with common experience.  (See, e.g., *Pemberthy, supra,* 19 F.3d at pp. 869-870 ["no simple equation can be drawn between ethnicity and language . . .  According to the 1990 census, approximately 25% of Hispanics do not claim proficiency in Spanish"].)  To the extent Pierce is suggesting that admissions officers could potentially apply the Spanish-speaking policy in a racially discriminatory manner, "that hypothetical possibility cannot sustain [a] facial challenge to the constitutional validity of the…policy."[4]  (See *Berkeley Unified, supra,*172 Cal.App.4th at p. 219 [rejecting plaintiff's assertion that school was using diversity score predicated on racial composition of a student's neighborhood "as a veiled substitute for a student's race" because "[o]n a facial challenge, [court] do[es] not consider the policy's application to the particular circumstances of an individual"]; *Tobe, supra,* 9 Cal.4th at p. 1084 [when assessing facial challenge, court only considers "the text of the measure itself, not its application to the particular circumstances of an individual"].)  In sum, Pierce has not shown that a Spanish language proficiency requirement "inevitably pose[s] a total and fatal conflict with [section 31]."  (*Tobe, supra*, 9 Cal.4th at p. 1084.)[5]

---

[4]    As stated above, Pierce clarified at oral argument that he is only pursuing a facial challenge to the Spanish language requirement.  He has not alleged that the school's language requirement constitutes an unlawful racial preference because it has a disparate impact on certain racial groups, or because it was adopted for the express purpose of favoring Hispanics in the admissions process.  Nor has he alleged that the school has applied the policy in a manner that favors Hispanics.  Instead, he contends only that the Spanish language requirement is, in itself, an unlawful racial preference, and that he would have been accepted into the school but for that unlawful requirement.

[5]    Because Pierce has failed to allege a cognizable claim under Article 1, Section 31 of the California Constitution, we need not address UCLA's contention that his pleadings demonstrate he is not qualified to attend the medical school, and therefore lacks standing to assert a discrimination claim.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


BLUMENFELD, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.