**Beth Ann SMITH, Plaintiff–Appellant,**

v.

**James F. McGLOTHLIN,
Defendant–Appellee.**

No. 96–55430.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1997.

Decided July 17, 1997.

James G. Dunn and Christine M. O'Hanlon, San Diego, CA, for plaintiff-appellant.

Jeffrey A. Morris and Daniel R. Shinoff, Stutz, Gallagher, Artiano, Shinoff & Holtz, San Diego, CA, for defendant-appellee.

Before: BROWNING, FLETCHER and KOZINSKI, Circuit Judges.

Per Curiam Opinion; Concurrence by Judge KOZINSKI.

## PER CURIAM:

Plaintiff Beth Ann Smith was a sixteen-year-old student at Orange Glen High School in Escondido, California. She was found to be carrying three knives: a double-edged dagger with a 4–inch blade, a folding knife with a 3–inch blade, and a smaller folding knife. School authorities turned her over to the police, but a juvenile court judge suppressed the evidence and dismissed the charges. Smith then brought this 42 U.S.C. § 1983 action against James F. McGlothlin, the vice principal who ordered the search which led to the discovery of the knives.

It all started at 7:30 on a schoolday morning in 1994 when McGlothlin and a school security guard traveled to a cul-de-sac near the school. McGlothlin had received complaints from neighbors that students on their way to school were congregating there, smoking. As he approached a group of 20 or so students, he noticed a cloud of smoke over their heads and furtive motions he associated with the discarding of smoking materials. Because he could not see which of the students had been smoking, he herded all of them to school and ordered them to remain in the suspension room. He then had each student searched individually, which took about two hours. It was during this search that Smith's knives were found.

■ Smith does not argue she was entitled to bring knives to school. Rather, she claims that McGlothlin acted unreasonably in searching her and thus discovering the knives. Smith raises two objections: that she was searched even though the school authorities did not have individualized suspicion she had been smoking; and that the search was conducted in an unreasonable manner. Both are easily disposed of.

In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the Supreme Court held that school officials conducting student searches must act reasonably. The Court expressly left open "whether individualized suspicion is an essential element of the reasonableness standard." *Id.* at 342 n. 8, 105 S.Ct. at 743. The Court has since approved a student search not based on individualized suspicion, *see Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663–65, 115 S.Ct. 2386, 2396, 132 L.Ed.2d 564 (1995) (urinalysis of high school athletes), suggesting that individualized suspicion is not the sine qua non of reasonableness in this context. *See also, Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 456, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412 (1990) (Brennan, J., dissenting) (no individualized suspicion necessary for sobriety checkpoints); *People v. Alexander B.*, 220 Cal.App.3d 1572, 1577–78, 270 Cal.Rptr. 342 (1990) (student search reasonable where suspicion focused on a group of five or six rather than defendant alone).

Were we required to rule whether the search was lawful, there would be authority for concluding it was. But we need not go so far because the district court dismissed on grounds of qualified immunity. The court held that it was not clearly established that the search was improper; vice principal McGlothlin, as a state official, was therefore immune from suit. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). As it is fairly clear that Smith was not in fact entitled to individualized suspicion before she could be searched, it could not have been clearly established in 1994 that she had such a right.

■ Smith's separate argument that the search was conducted unreasonably falls even farther from the mark. Smith argues it was unreasonable for McGlothlin to conduct a "mass search" without first asking who had been smoking, since some of the students might have confessed. But unless every student confessed, McGlothlin could not have been sure whether all those guilty of smoking had done so. In the end, he would have had to search all those who had not confessed, which presumably would have included Smith. Smith also argues that the two hour delay in completing the search was unreasonable. But a student is required to be on school premises, subject to the direction of the school authorities, during the course of the schoolday. Her preference for being in the classroom rather than the suspension room does not amount to a liberty interest cognizable under the due process clause.

**AFFIRMED.**

KOZINSKI, Circuit Judge, with whom Circuit Judge FLETCHER joins, concurring.

Smith's complaint is a triumph of petulance over common sense. A teenager who gets into trouble because she is caught bringing knives to school might, for lack of mature judgment, feel that she is the one who has been wronged. But she can't turn such wishful thinking into a lawsuit without support from her parents and the services of a lawyer-adults who do not have youth and inexperience as excuses. Before bringing suit, Smith's parents might profitably have pondered their own culpability and considered what they might have done to prevent their child's misconduct. Smith's lawyer might have thought about whether it was right to impose the cost, risk and pain of a lawsuit on a civil servant who acted responsibly under difficult circumstances. And Smith herself might have thanked her lucky stars when she got off easy because her juvenile court judge misread the law and suppressed the evidence. Smith and the adults who abetted her might all have taken a lesson in common

sense from the other students who were subjected to the same search—and thus suffered the same "harm"—but did not make a federal case out of it.

There are, unfortunately, too many instances of genuine official abuse. *See, e.g., Lohr v. State of Florida Dept. of Corrections,* 835 F.2d 1404 (11th Cir.1988) (sheriff handcuffed inmate and ordered dog to attack him); *Davis v. Locke,* 936 F.2d 1208 (11th Cir.1991) (guards taunted prisoner with racial slurs and dropped him from truck onto his head while shackled); *Cox v. District of Columbia,* 821 F.Supp. 1 (D.D.C.1993) (police officer beat and kicked Cox, ground foot into his face, then threw him into paddywagon and drove around so as to slam Cox against walls). Our ability to deal with such cases is diminished when the civil rights laws are trivialized as they were here. It reflects ill on the legal profession and our litigious society that this vexatious lawsuit was filed at all, and that it's been pursued this far.