[No. E030144. Fourth Dist., Div. Two. Jan. 14, 2003.]

EVAN GRANOWITZ, a Minor, etc., Plaintiff and Appellant, v. REDLANDS UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

350

### COUNSEL

Granowitz, White and Weber, Richard A. Granowitz, Steven R. Weber and Harry W. R. Chamberlain II for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Ronald C. Ruud and Jennifer E. Mullendore for Defendants and Appellants.

Gagen, McCoy, McMahon & Armstrong, Gregory L. McCoy and Tara-Nicholle B. Nelson for Association of California School Administrators as Amicus Curiae on behalf of Defendants and Appellants.

Best, Best & Krieger, Dina O. Harris and Cathy S. Holmes for California School Boards Association Education Legal Alliance as Amicus Curiae on behalf of Defendants and Appellants.

**OPINION**

**GAUT, J.**—

### 1. *Introduction*

Evan Granowitz, a high school senior, was suspended for five days after several fellow students accused him of sexually related misbehavior, including grabbing a girl by the buttocks.

After a nine-day trial, the court found plaintiff had been denied due process and, under 42 United States Code section 1983, awarded plaintiff general damages in the amount of $45,000 and punitive damages in the amount of $50,000. The court also awarded plaintiff attorney's fees in the amount of $75,268. Plaintiff and defendants have filed cross-appeals.

On appeal, the principal issue is whether, as a matter of law, defendants afforded plaintiff due process in suspending him. Employing a melange of federal and state law and administrative regulations, plaintiff claims violations of both procedural and substantive due process. We decide the trial court erred in its determination that plaintiff was denied due process and reverse the judgment.

### 2. *Factual and Procedural Background*

Because the pertinent facts are undisputed, we primarily adopt the trial court's recitation of the facts from the statement of decision. Defendant Robert Denham was the principal at Redlands High School. Prompted by student complaints, he investigated sexually inappropriate conduct by four male students, including plaintiff. Denham talked to plaintiff, other students, and school staff, including teachers and counselors. Plaintiff and the three

other boys told Denham other students were trying to blackmail them and impair their college prospects. Denham then asked plaintiff and his parents to attend a meeting on February 10, 1998.

The purpose of the meeting was to allow plaintiff to respond to the charges against him. Plaintiff, his mother, and his father, a lawyer, met with Denham, who explained that plaintiff and three other boys on the speech team had been implicated in sexual misconduct. Denham told plaintiff and his parents that he had interviewed several credible witnesses and he was deciding whether to suspend plaintiff for sexual harassment. Denham described four kinds of objectionable behavior by plaintiff including: inappropriate sexual comments and gestures; simulating masturbation or sex; groping or "diddling" of other boys; and grabbing a girl by the buttocks. According to A Concise Dictionary of Slang and Unconventional English,[1] "diddle" means "to digitate sexually and successfully." Denham understood "diddling" to mean grabbing a boy's genitals or digitally probing a boy's anus. Based on the advice of counsel to protect the identity of witnesses and victims, Denham did not provide specific names, dates, or locations in spite of repeated demands from plaintiff and his father for more detail.

Plaintiff denied most of the alleged misconduct although earlier, during another conversation with Denham, he had acknowledged making ribald comments among like-minded peers who were not offended. At the February 10th meeting, plaintiff admitted touching a girl's buttocks accidentally when trying to attract her attention. Plaintiff's father suggested the girl plaintiff had grabbed was biased because her mother owed money to plaintiff's father. Following the meeting, Denham decided to impose the longest term of suspension, five days.

The notice of suspension listed the reasons for plaintiff's suspension as being for violations of the Education Code: "48900(a)(2) Wilfully used force or violence upon the person of another, except in self-defense; 48900(i) Committed an obscene act; 48900(n) Committed a sexual battery as defined in Section 243.4 of the Penal Code; 48900.2 Sexual harassment." In the meeting, Denham had not specifically mentioned "wilfully us[ing] force or violence upon the person of another, except in self-defense" or sexual battery, as prohibited by section 48900, subdivisions (a)(2) and (n).

After serving his suspension, plaintiff graduated from high school in 1998 and started college at Emory University in the fall.

On October 14, 1998, plaintiff filed a federal civil rights action in the United States District Court. On December 18, 1998, he dismissed the

[1]Beale, A Concise Dictionary of Slang and Unconventional English (1989).

federal action subject to a stipulation between the parties in which they agreed to a dismissal without prejudice to allow plaintiff to file an amended complaint in state court. The stipulation provided the statute of limitations "shall be tolled during the time frame this action was pending before this court, and for 30 days thereafter."

Plaintiff filed the present state action on January 19, 1999, but he did not include a cause of action for violation of his federal civil rights. During trial in August 2000, plaintiff filed a motion to amend his complaint to state a federal civil rights claim and seeking monetary damages. The court granted the motion and awarded plaintiff general damages, punitive damages, and attorney's fees under 42 United States Code section 1983 against defendant Denham personally.

### 3. *Constitutional Due Process*

■ The parties disagree as to the proper standard of review on the issue of whether plaintiff was afforded due process. Plaintiff asserts we must look for substantial evidence to support the trial court's decision. Defendants maintain that it is proper to conduct a de novo review of the trial court's application of the law to the undisputed material facts. We agree with defendants that the proper standard of appellate review is de novo.[2] In reaching this conclusion, we emphasize that we are deciding only whether plaintiff was suspended in accordance with the limited requirements of due process under the circumstances of this case. We recognize the deference we must accord to an administrator's decision to discipline a student.[3]

■ Plaintiff argues he was denied due process under federal and state constitutional law, the Education Code, and the regulations of the Redlands Unified School District. Defendants make the more compelling argument that the trial court erred in deciding plaintiff was denied due process.

■ We first consider the issue of procedural due process. When facing a temporary short-term suspension, a student has minimal procedural due

---

[2]*Goddard v. South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701]; *California School Employees Assn. v. Kern Community College Dist.* (1996) 41 Cal.App.4th 1003, 1008 [48 Cal.Rptr.2d 889].

[3]*Epperson v. Arkansas* (1968) 393 U.S. 97, 104 [89 S.Ct. 266, 270, 21 L.Ed.2d 228]; *Bethel School Dist. No. 403 v. Fraser* (1986) 478 U.S. 675, 686 [106 S.Ct. 3159, 3166, 92 L.Ed.2d 549]; *Hazelwood School District v. Kuhlmeier* (1988) 484 U.S. 260, 274-276 [108 S.Ct. 562, 571-573, 98 L.Ed.2d 592].

process rights, including the right to a hearing. As described by the United States Supreme Court in *Goss v. Lopez*:[4]

"We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency. Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

". . . [I]n being given an opportunity to explain his version of the facts . . . the student [must] first be told what he is accused of doing and what the basis of the accusation is. . . ."[5]

Recognizing the burden it would place on the public schools, the *Goss* court rejected more expanded due process rights for short-term suspensions: "We stop short of construing the Due Process Clause to require, country-wide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process."[6]

Before and after *Goss*, courts have consistently refused to impose stricter, adversarial, "trial-like procedures and proof" on public school suspension proceedings.[7] Instead, an informal meeting between the school official and a

---

[4]*Goss v. Lopez* (1975) 419 U.S. 565 [95 S.Ct. 729, 42 L.Ed.2d 725].

[5]*Goss v. Lopez, supra,* 419 U.S. at pages 581-582 [95 S.Ct. at pages 739-740], footnote omitted.

[6]*Goss v. Lopez, supra,* 419 U.S. at page 583 [95 S.Ct. at pages 740-741].

[7]*West v. Derby Unified School Dist. No. 260* (10th Cir. 2000) 206 F.3d 1358, 1364; *Charles S. v. Board of Education* (1971) 20 Cal.App.3d 83, 92 [97 Cal.Rptr. 422].

student or between the official and a student and his parents has been held to comport with due process.[8]

Plaintiff protests that he was not provided with enough detail to allow him to refute the charges and, additionally, that the formal grounds given in the written notice of suspension did not match the reasons given orally by Denham in the presuspension meeting. Defendants assert plaintiff was informed about the complaints made against him and given an opportunity to respond to them. We agree.

First, we conclude Denham adequately explained the reasons for the suspension to plaintiff. Although Denham did not identify plaintiff's accusers, he offered sufficient descriptions of diddling and simulated masturbation to allow plaintiff to deny he had ever engaged in such distinctive and inappropriate activity. Furthermore, plaintiff had admitted making comments or gestures that could be construed negatively and also unintentionally touching a girl who strongly objected. No more was required to advise plaintiff about the accusations against him. Nor was he entitled to know the identities of his accusers especially in a case involving sexual misconduct.[9] Disclosing those identities might have exposed Denham and the school to lawsuits by the complainants.

Additionally, the reasons for suspension given by Denham in the meeting were the same as the grounds listed in the notice of suspension, the only difference being that in the notice the reasons were expressed in specific statutory language.

Section 48900 of the Education Code lists the following as grounds for suspension:

"A pupil may not be suspended from school . . . unless the superintendent or the principal of the school in which the pupil is enrolled determines that the pupil has committed an act as defined pursuant to one or more of subdivisions (a) to (p), inclusive: [¶] . . . [¶]

"[(a)](2) Willfully used force or violence upon the person of another, except in self-defense. [¶] . . . [¶]

---

[8]*Martin v. Shawano-Gresham School Dist.* (7th Cir. 2002) 295 F.3d 701, 706-707; *Smith on Behalf of Smith v. Severn* (7th Cir. 1997) 129 F.3d 419, 428; *C.B. by and Through Breeding v. Driscoll* (11th Cir. 1996) 82 F.3d 383, 385-386; *Charles S. v. Board of Education, supra,* 20 Cal.App.3d at page 94.

[9]Education Code section 48918, subdivision (f); California Code of Regulations, title 5, section 4621, subdivision (a); *Coplin v. Conejo Valley Unified School Dist.* (C.D.Cal. 1995) 903 F.Supp. 1377, 1382-1383, citing *Newsome v. Batavia Local School Dist.* (6th Cir. 1988) 842 F.2d 920, 924-925 and *Brewer by Dreyfus v. Austin Independent Sch. Dist.* (5th Cir. 1985) 779 F.2d 260, 263.

"(i) Committed an obscene act or engaged in habitual profanity or vulgarity. [¶] . . . [¶]

"(n) Committed . . . a sexual battery as defined in Section 243.4 of the Penal Code."

Education Code section 48900.2 also permits suspension for sexual harassment:

"In addition to the reasons specified in Section 48900, a pupil may be suspended from school . . . if the superintendent or the principal of the school in which the pupil is enrolled determines that the pupil has committed sexual harassment as defined in Section 212.5.

"For the purposes of this chapter, the conduct described in Section 212.5 must be considered by a reasonable person of the same gender as the victim to be sufficiently severe or pervasive to have a negative impact upon the individual's academic performance or to create an intimidating, hostile, or offensive educational environment."

Education Code section 212.5 similarly describes sexual harassment to mean "unwelcome sexual advances, requests for sexual favors, and other verbal, visual, or physical conduct of a sexual nature, made by someone from or in the work or educational setting, under any of the following conditions: [¶] . . . [¶]

"(c) The conduct has the purpose or effect of having a negative impact upon the individual's work or academic performance, or of creating an intimidating, hostile, or offensive work or educational environment."

Certainly, everything of which plaintiff was accused—obscene gestures and comments, simulated sexual acts, diddling, and groping—could properly be identified by Denham, as a high school principal, as sexual harassment under Education Code sections 212.5 and 48900.2, meaning "unwelcome sexual advances, requests for sexual favors, and other verbal, visual, or physical conduct of a sexual nature, made by someone from or in the . . . educational setting . . . ." The same conduct also fits the definition of Education Code section 48900, subdivision (i), prohibiting "an obscene act or engag[ing] in habitual profanity or vulgarity." Additionally, plaintiff's uninvited touching of other boys and a girl could qualify as "the wilful use of force or violence" or sexual battery.[10] The use of statutory language in the

---

[10]Education Code section 48900, subdivisions (a)(2) and (n).

notice of suspension to describe plaintiff's offenses, as well as the addition of other grounds for the suspension, did not violate due process.[11]

The record also does not support that defendants violated any right of substantive due process. A school suspension is an executive decision that does not implicate rights of substantive due process if "proper procedural protections are afforded,"[12] as they were here. In the absence of any constitutional due process violation, plaintiff's 42 United States Code section 1983 claim fails.[13]

### 4. *Due Process Under State Law and Administrative Regulations*

Although no damages or attorney's fees were recoverable except under 42 United States Code section 1983,[14] we briefly address plaintiff's other claims.

■ Just as there was no constitutional due process violation, there was no violation of the suspension procedures set forth in the Education Code. Education Code section 48911, subdivision (b), provides that a suspension must be preceded by an "informal conference" between the principal and the student. That is what occurred here.

We reject plaintiff's argument that he could not be suspended for a first offense. Education Code section 48900.5 allows suspension under section 48900, subdivision (a), for a first offense for the use of force or violence on another person or if "the pupil's presence . . . threatens to disrupt the instructional process." Both those elements were established. Even if Denham based the suspension solely on the incident in which plaintiff purportedly grabbed a girl's buttocks, that conduct qualifies for a first time suspension under section 48900, subdivision (a), both as the use of force on another person and as a threat to the instructional process. For the same reason, we reject plaintiff's contention that section 48900.5 required the principal to impose alternative forms of discipline before suspension.

Lastly, there was no violation of Redlands Unified School District administrative regulation No. 5144.1. The regulation authorizes first time expulsion for causing, attempting, or threatening physical injury to another

---

[11]*Smith on Behalf of Smith v. Severn, supra,* 129 F.3d at pages 427-428.

[12]*C.B. by and Through Breeding v. Driscoll, supra,* 82 F.3d at page 387.

[13]*Parratt v. Taylor* (1981) 451 U.S. 527 [101 S.Ct. 1908, 68 L.Ed.2d 420], overruled on other grounds in *Daniel v. Williams* (1986) 474 U.S. 327, 330 [106 S.Ct. 662, 664, 88 L.Ed.2d 662]; *Baker v. McCollan* (1979) 443 U.S. 137, 140 [99 S.Ct. 2689, 2692, 61 L.Ed.2d 433].

[14]*Tirpak v. Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 644 [232 Cal.Rptr. 61].

person. The regulation also authorizes first time expulsion for committing an obscene act or disrupting school activities, in conjunction with threatening to disrupt the instructional process. Plaintiff argues he could not be suspended on the first occasion for acts constituting sexual harassment, obscene acts, wilful use of force or violence, or sexual battery. He characterizes the Education Code as a "menu" from which a school district can choose grounds for expulsion. In other words, plaintiff interprets regulation 5144.1 as repealing the statutory grounds for suspension enacted under the Education Code.

Plaintiff's brief asserts "[i]t is fundamental and undisputable that an administrative agency may place more restrictions on itself than are placed on it by the Legislature, the state [C]onstitution, or the United States Constitution." What plaintiff actually argues is that the school district can adopt fewer grounds for suspension than state law allows.

Plaintiff offers no authority for this startling interpretation of administrative fiat. But the recent case of *Martin v. Shawano-Gresham School District,* recognizes suspension is justified under state law even when the grounds for suspension are not expressly stated under school rules. In that case, the school prohibited the use of tobacco and state law prohibited possession of tobacco. The court held the student was properly suspended for possession.[15] Here we hold plaintiff was properly suspended for the grounds stated in the notice of suspension.

## 5. *Disposition*

Our decision on the issue of due process disposes of all the other issues raised in the appeal and the cross-appeal. In particular, it eliminates any possibility that plaintiff could have overcome the defense of qualified immunity because plaintiff could not have proved that defendants violated a right " 'clearly established at the time of the alleged violation.' "[16]

As a final note, we join the Seventh Circuit Court of Appeals in deploring the exploitation of the legal system to pursue a case of this ilk. A minor suspension of trivial effect, accomplished with proper constitutional safeguards, has resulted in a costly expenditure of judicial, public, and private resources: "Something has gone badly wrong when the scarce judicial resources of the . . . courts are brought to bear on a case which has so little merit as this one. This is the type of case that trivializes the work of the

[15]*Martin v. Shawano-Gresham School Dist., supra,* 295 F.3d at page 706, footnote 4.
[16]*Wilson v. Layne* (1999) 526 U.S. 603, 609 [119 S.Ct. 1692, 1697, 143 L.Ed.2d 818].

courts and the Constitution we seek to interpret. Moreover, these cases divert judicial energy from litigants who have serious and valid claims."[17]

We also adopt the sentiments of Judge Kozinski expressed in a case where he called the complaint of a disciplined student "a triumph of petulance over common sense. A teenager who gets into trouble . . . might, for lack of mature judgment, feel that [he] is the one who has been wronged. But [he] can't turn such wishful thinking into a lawsuit without support from [his] parents and the services of a lawyer—adults who do not have youth and inexperience as excuses. Before bringing suit, [a student's] parents might profitably have pondered their own culpability . . . . [A parent-lawyer] might have thought about whether it was right to impose the cost, risk and pain of a lawsuit on a civil servant who acted responsibly under difficult circumstances. . . . [The student] and the adults who abetted [him] might all have taken a lesson in common sense from the other students who . . . suffered the same 'harm'—but did not make a federal case out of it.

"There are, unfortunately, too many instances of genuine official abuse. [Citations.] Our ability to deal with such cases is diminished when the civil rights laws are trivialized as they were here. It reflects ill on the legal profession and our litigious society . . . ."[18]

We reverse the judgment and award defendants their costs as the prevailing party.

McKinster, Acting P. J., and Richli, J., concurred.

A petition for a rehearing was denied January 31, 2003, and the petition of appellant Evan Granowitz for review by the Supreme Court was denied April 30, 2003. Kennard, J., did not participate therein.

---

[17]*Smith on Behalf of Smith v. Severn, supra,* 129 F.3d 419, 430.
[18]*Smith v. McGlothlin* (9th Cir. 1997) 119 F.3d 786, 788-789.