**Jonathan Carl Coch SIMONIAN, Plaintiff,**

v.

**FOWLER UNIFIED SCHOOL DISTRICT, et al., Defendant.**

No. CV–F–06–1416 OWW/LJO.

United States District Court, E.D. California.

Jan. 17, 2007.

James B. Betts, Joseph D. Rubin, Betts & Wright, Fresno, CA, for Plaintiff.

Jeffrey R. Olson, M., McCormick, Barstow, Sheppard, Wayte & Carruth, Modesto, CA, for Defendant.

## ORDER DENYING FOWLER UNIFIED SCHOOL DISTRICT'S MOTION TO DISMISS [Doc. 9]

WANGER, District Judge.

Plaintiff Jonathan Carl Coch Simonian has filed a Complaint for Violation of Equal Protection Clause. Defendants are the Fowler Unified School District (District) and Does 1 through 40.

Paragraph 1 of the Complaint alleges that Plaintiff "brings this action for redress of [the District's] violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution" and that "[p]ursuant to 28 U.S.C. Section [sic] 1331 and 1343(a), the Court has jurisdiction over the claim, which is brought under 42 U.S.C. Section 1983."

Paragraphs 7 through 10 of the Complaint allege that during the fall semester of Plaintiff's senior year at Fowler High School, District officials conducted a search of Plaintiff's car, asserting that the search "revealed a 'pin-head sized leaf of marijuana' found stuck to a piece of rubber lining on the bottom of the front console glove compartment, under a garage door opener." On October 14, 2004, Plaintiff was advised by the District's Board of Education that the Board had voted to expel Plaintiff for the balance of the first semester of the 2004/2005 school year, but to suspend the expulsion and place Plaintiff on probation in an alternative educational program for the balance of the first semester. In support of its decision, the District's Board of Education observed:

> Grounds exist for the student's expulsion from the Fowler Unified School District for violation of Education Code Section 48900(c) and the District's Student Discipline Policy. The Board further finds that due to the nature of the offense and the prior incidents of suspected marijuana use, that other means of correction are not feasible or have failed to bring about proper conduct.

Plaintiff appealed to the Fresno County Board of Education. On December 16, 2004, the Fresno County Board of Education reversed Plaintiff's expulsion, observing:

> A. The pin-head sized speck pulled from Plaintiff's [sic] car was not a useable amount of marijuana, which, under criminal law, would preclude conviction;
>
> B. The record was devoid of evidence to suggest that Appellant's behavior could not feasibly be corrected;
>
> C. The record is void [sic] of any efforts to remediate Appellant's behavior through other means of correction; and
>
> D. Assuming the possession of a speck of marijuana can support an expulsion, the Fowler Unified School District confirmed that Plaintiff [sic] was an 'A' student, works of weekends, participates in both band and leadership classes, has

been simultaneously taking classes at Fowler High School and California State University, Fresno, quite successfully, was respectful of adults, had a clean record, favorable attendance and had handled the situation well.

Plaintiff, as a result of the expulsion, "was forced to miss approximately three months of the first semester of his senior year, during which he was precluded from participating in normal school activities and functions."

The Complaint alleges a single cause of action for denial of equal protection pursuant to 42 U.S.C. § 1983 and prays for $500,000 in compensatory damages and for attorney's fees and costs.

The District moves to dismiss the Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

### A. *Governing Standards.*

■■■ A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker,* 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–706 (9th Cir.1998).

### B. *Merits of Motion.*

The District contends that the Complaint fails to state a claim because California statute and case law precludes monetary damages for what the District characterizes as a tort claim for educational malpractice resulting from a disciplinary action.

Specifically, the District cites California Government Code § 815(a) ("[e]xcept as otherwise provided by statute: [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.")

■■■ To the extent that the District's motion relies on Section 815, the motion is without merit and is DENIED. Section 815 was enacted to eliminate public entity liability based upon common law tort claims. *See Williams v. Horvath,* 16 Cal.3d 834, 838, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976); *see also Cochran v. Herzog Engraving Co.,* 155 Cal.App.3d 405, 409, 205 Cal.Rptr. 1 (1984) ("Government

Code section 815, enacted in 1963, abolished all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the federal or state Constitution.") The Complaint is not based on common law tort. The Complaint alleges that the District denied Plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment and is brought pursuant to a federal statute, 42 U.S.C. § 1983.

The District also argues that dismissal is required because Plaintiff cannot state a claim for relief based on the District's action of expulsion. In so arguing, the District relies primarily on *Tirpak v. Los Angeles Unified School District,* 187 Cal. App.3d 639, 232 Cal.Rptr. 61 (1986) and *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 131 Cal.Rptr. 854 (1976).

In *Tirpak,* a student who was suspended from school and denied readmission, brought an action for damages against the school district. The Court of Appeals rejected the student's contention that the school district had breached a mandatory duty under California Government Code § 815.6 based on the California Constitution and California Education Code § 48200, resulting in economic injury. The Court of Appeals agreed with the school district that the suspension and expulsion provisions in California Education Code "sections 48900, 48911 and 48918 are part of a comprehensive set of procedural guidelines found in the Education Code, which are administrative in nature and intended to provide due process" and held that "[s]ince it is clear that these provisions of the Education Code were not designed to protect students and their parents from money damages resulting from 'educational' injuries, plaintiffs have failed to state facts sufficient to constitute a cause of action." 187 Cal.App.3d at 643, 232 Cal.Rptr. 61.

In *Peter W.,* a student claimed that the school district was negligent in failing to provide the student with an adequate education. The Court of Appeals held that a school district does not owe a duty of care to students:

We find in this situation no conceivable 'workability of a rule of care' against which defendants' alleged conduct may be measured . . ., no reasonable 'degree of certainty that . . . plaintiff suffered injury' within the meaning of the law of negligence . . ., an no such perceptible 'connection between the defendant's conduct and the injury suffered,' as alleged, which would establish a causal link between them within the same meaning. These recognized policy considerations alone negate an actionable 'duty of care' in persons and agencies who administer the academic phases of the public educational process. Others, which are even more important in practical terms, command the same result. Few of our institutions, if any, have aroused the controversies, or incurred the public dissatisfaction, which have attended the operation of the public schools during the last few decades. Rightly or wrongly, but widely, they are charged with outright failure in the achievement of their educational objectives; according to some critics, they bear responsibility for many of the social and moral problems of our society at large. Their public plight in these respects is attested in the daily media, in bitter governing board elections, in wholesale rejections of school bond proposals, and in survey upon survey. To hold them to an actionable 'duty of care,' in the discharge of their academic functions, would expose them to the sort of claims—real or imagined—of disaffected students and parents in countless numbers. They are already beset by social and financial problems which have gone to major liti-

gation, but for which no permanent solution has yet appeared ... The ultimate consequences, in terms of public time and money, would burden them—and society—beyond calculation.

60 Cal.App.3d at 825, 131 Cal.Rptr. 854.

■ The District argues that these cases make clear that a plaintiff cannot seek money damages for any injury stemming from the school's administration of discipline, whether at the classroom level or by the administration.

■ However, as Plaintiff responds, the Complaint is not based on tort or California law, but rather, alleges a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff notes that the Supreme Court has applied the Equal Protection Clause to a "class of one". *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ("[T]he Equal Protection Clauses gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group" and "where the plaintiff alleges that [he] as been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). Where an equal protection challenge is based on "selective enforcement of valid laws", a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for "an impermissible motive." *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004). Plaintiff refers to the Complaint's allegations of: (1) intentional acts or omissions by the District based on malice or bad faith intent; (2) taken under color of state law; (3) that caused a deprivation of Plaintiff's right to equal protection; (4) and that Plaintiff's treatment was in contrast to the discipline accorded the daughter of the District's governing board who was found to be un-

der the influence of drugs and/or alcohol on campus. Plaintiff contends that the Complaint states a claim upon which relief can be granted for violation of equal protection pursuant to Section 1983.

In its reply brief, the District asserts that this case presents an "issue of first impression", i.e., "whether the Equal Protection Clause trumps California state law that specifically prohibits a suit for money damages on the grounds that a secondary public education student was unfairly disciplined or that the school district failed to follow the suspension or expulsion provisions of California's Education Code." Although the District represents that it was unable to locate any authority addressing the issue, the District does refer to *T.H. v. San Diego Unified School Dist.*, 122 Cal. App.4th 1267, 19 Cal.Rptr.3d 532 (2004) and *Granowitz v. Redlands Unified School Dist.*, 105 Cal.App.4th 349, 129 Cal.Rptr.2d 410 (2003).

In *T.H.*, a student brought a civil action against a school district, seeking injunctive and declaratory relief after she was expelled from an alternative program for violating a school rule and placed in a community school where she was allegedly assaulted and sexually harassed, and further contending that the school district's "zero tolerance" regulations facially violated procedural due process under the United States and California Constitutions. In addressing the student's contention that district regulation violated the California Education Code, the Court of Appeals noted that it must construe the statutes "keeping in mind the Legislature's expressed intent to provide each school district with broad discretion and flexibility to accomplish its educational mission" and that "[a]bsent a specific statutory limitation, a school district 'is free to act as it sees fit within the purposes for which it was established.'" 122 Cal.App. at 1281,

10 P.2d 1030. In pertinent part, the Court of Appeals rejected the facial due process challenge. 122 Cal.App.4th at 1286–1287, 19 Cal.Rptr.3d 532. In so holding, the Court of Appeals rejected the challenge that the school district's "Notice of Zero Tolerance Policy" sent home to parents did not identify every single offense for which expulsion was possible, holding that the record established that the school district provided repeated notices to parents and students who are subject to expulsion and that there is "no authority supporting the proposition that individuals have a due process right to be told in advance of every possible specific offense that could subject them to punishment [but] instead, individuals have the right to procedural protections once an allegation is made against them, and the District's regulations provide these required protections to students." *Id.* at 1287, 19 Cal.Rptr.3d 532. The Court of Appeals further rejected the due process challenge that a student is never told that the school district's policies remove a school principal's statutory discretion to decide whether to recommend expulsion for zero tolerance offenses, holding that "[t]here is no authority for the proposition that a student is constitutionally entitled to have notice of the scope of a principal's authority vis-à-vis the governing school board" and that "the District regulations provide a student with the right to a full range of statutory protections, and these rights are not diminished merely because a school principal does not have the discretion to dismiss the matter at the outset of the process." *Id.*

Finally, the Court of Appeals rejected the facial due process challenge that the school district policies permit the principal/superintendent to recommend a student for expulsion for offenses that are not included in the discipline provisions of the California Education Code, ruling that there was no showing in the record that the school district will expel for these of-fenses under its policies and that, to the extent there are some inconsistencies within the school district's rules with respect to these offenses, the inconsistencies do not create an inevitable due process violation. *Id.* The Court of Appeals noted that, "[t]o the extent a student believes he or she did not receive proper notice in a particular case, the student may bring an 'as applied' challenge to the expulsion order." *Id.* at 1287 n. 8, 19 Cal.Rptr.3d 532.

In *Granowitz*, a high school student brought an action for violation of substantive and procedural due process pursuant to 42 U.S.C. § 1983 against the school district after he was suspended for five days for sexually related misbehavior. The Court of Appeals rejected these constitutional challenges on their merits, 105 Cal.App.4th at 354–358, 129 Cal.Rptr.2d 410. In *dicta*, the Court of Appeals, citing *Tirpak v. Los Angeles Unified School District, id.,* 187 Cal.App.3d at 644, 232 Cal. Rptr. 61, stated that "no damages or attorney's fees were recoverable except under 42 United States Code section 1983". *Id.* at 358 n. 14, 129 Cal.Rptr.2d 410.

Relying on these cases as well as *Tirpak,* the District argues:

[These cases] make it clear that the administration of discipline of public school students is unique in itself. It is contended this uniqueness prohibits a comparison of enforcement techniques or processes carried out by governmental agencies seeking to enforce laws upon the general public to the administration of discipline at school by school officials. Accordingly, the 'selective enforcement' cases, to include those cited by plaintiff in his opposition to this motion, are distinguishable and should not be controlling in this type of case. The *Peter W.* and the *Tirpak* court were both concerned with the floodgate of litigation that would ensure if students were able to sue for educational mal-

practice or disenchantment with the discipline administered to them by school officials. For public policy reasons these types of lawsuits are prohibited. School administrators should not be unduly restricted from exercising their broad discretionary powers to administer school discipline, to be fearful of administering too much or too little discipline in a particular instance, such that it may create the appearance of unequal treatment. Schools are unique in themselves, as often dictated by the particular student population, the families they come from, the school employees and officials, and the makeup of the community within the district. And students are unique in themselves. Discipline of one student compared to another may be vastly different depending upon the many varied factors considered in deciding what discipline to administer. School officials should be free to administer discipline without fear of policing by the Equal Protection Clause, which in defendant's view would cause havoc of effective administration of discipline and a school's best efforts to control misbehavior and make schools safe.

To permit a student to seek monetary damages under the guise of the Equal Protection Clause would, in effect, nullify the *Tirpak* holding. One can only imagine the number of students that believe their discipline administered by school officials was too harsh, that they had been unfairly targeted and that the school officials intended to so discipline them. Defendants contend that the sundry motivations of local school officials should not be policed by the Equal Protection Clause of the United States Constitution. The sheer number of possible cases that could come before a court is staggering. Even a moderately artful complaint could bring nearly every disciplined student before the court complaining that the discipline was too severe and that he/she was unfairly targeted. The state can adequately police its own processes in this regard. As *Tirpak v. Los Angeles Unified School Dist* .... explained, 'student that believes the disciplinary procedures were not fairly administered can proceed by way of administrative mandamus or injunction to enforce the procedures contained therein.' It should also be noted school district members are elected officials and accountable to their constituents within their district.

In a footnote to the reply brief, the District contends that "only due process violations should be actionable with respect to 'constitutional principles,' as the suspension and expulsion provisions of the Education Code are administrative in nature and designed to ensure procedural fairness."

None of the authority cited by the District precludes a claim under Section 1983 for violation of equal protection in the administration of school discipline by a school district. In fact, the District's cited authority demonstrates that California courts have addressed constitutional challenges, albeit due process challenges, on their merits. The District's parade of horrors that will result if such a challenge is allowed to proceed raise legitimate concerns, but cannot preclude as a matter of law such a challenge. The District cites no authority from which it may be inferred that state educational policies and provisions can prevent a claim that those provisions were unconstitutionally applied.[1]

---

1. At the hearing, the District referred to federal cases from circuits other than the Ninth Circuit discussing the application of the "class of one" and argued that Plaintiff cannot state a claim based on those decisions.

This Order does not discuss the District's assertion. These cases were not cited in the District's briefs in support of the motion to dismiss and citations were not provided at the

ACCORDINGLY, as set forth above, Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is DENIED.

**IT IS SO ORDERED.**

hearing, thereby preventing Plaintiff from responding.

In addition, the court *sua sponte* raised the issue of Eleventh Amendment immunity, referring the parties to *Belanger v. Madera Unified School District,* 963 F.2d 248 (9th Cir. 1992), *cert. denied,* 507 U.S. 919, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993). No opinion is expressed concerning the application of the Eleventh Amendment or the possibility that the immunity has been waived. *See Hill v. Blind Industries and Services of Maryland,* 179 F.3d 754, 758–759 (9th Cir.1999), *amended on denial of rehearing,* 201 F.3d 1186 (9th Cir. 1999).