Filed 3/14/22  A.H. v. Simi Valley Unified School Dist. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| A.H. et al, <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SIMI VALLEY UNIFIED SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | 2d Civ. No. B304038 <br> (Super. Ct. No. 56-2018-00512587- CU-PO-VTA) <br> (Ventura County) |

Four seniors at Simi Valley High School (SVHS), including the class valedictorian and salutatorian, were suspended from school for three days and had their graduation privileges revoked for drinking alcohol or using marijuana during Prom Night.  The students (collectively "plaintiffs") brought this action for damages against the Simi Valley Unified School District (District), Principal Dean May and Assistant Principal Brian Cox for violation of their Fourteenth Amendment due process rights.  (42 U.S.C. § 1983 (section 1983).)  They claim May and Cox violated

their procedural due process rights by providing inadequate notice of the charges against them and depriving them of a meaningful opportunity to be heard.

May and Cox moved for summary judgment. The trial court granted the motions, concluding plaintiffs had failed to raise a triable issue of material fact as to their liability for the alleged due process violations or supervisory liability claims. The court further determined May and Cox were qualifiedly immune from suit. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2018, the four plaintiffs, A.H., D.S., A.B. and S.P., attended Prom Night in Los Angeles. D.S. arranged for a private party bus to transport 30 students, including plaintiffs, to the event. After the students disembarked from the bus, May and Cox observed one student who was visibly intoxicated and ill. That student was with another student who admitted drinking alcohol. The other students from the bus were then pulled from the indoor Prom venue and questioned.

May and his three Assistant Principals, John Baxter, April Jacobsen and Cox, attended the Prom as chaperones. On the following Monday, May 7, 2018, they met to discuss what they had discovered while questioning plaintiffs and the other students. May and the assistant principals agreed that any student who was under the influence of or in possession of alcohol or marijuana on Prom Night would receive a three-day suspension, instead of the typical five-day suspension, but would be allowed take their AP tests. The administrators "did not make any final decisions regarding specific students as they planned to meet with [the] students individually before imposing any discipline."

May was scheduled to meet with D.S. and his parents. Cox was assigned to A.H.; Jacobsen and Baxter were assigned, respectively, to A.B. and S.P. May had previously "given [the] assistant principals . . . written authority to act as his designee and impose suspensions pursuant to Education Code, section 48911." (Underscoring omitted.)

*A. A.H.'s Suspension*

Cox met with A.H. in his office on May 7, 2018. Prior to that meeting, while Cox was continuing his investigation, an unnamed student "informed [him] that there was a group chat going on called prom squat killas . . . in which A.H. and other students were coming up with a story and telling everyone to stick to it. [Cox] asked to see the chat and the student shared it with [him]. There were two social media platforms for chatting that were being used."

Cox told A.H. to write a statement and indicated that if he was honest, Cox would "let him off." A.H.'s statement admitted to bringing alcohol and marijuana on the bus, hiding the marijuana in the bushes and using a fake ID to obtain alcohol. A.H. never told Cox or anyone else that his statement was untrue.

Cox referred A.H. for suspension and sent him home with his 29-year-old sister. A.H.'s sister asked what had happened on Prom Night and Cox told her what A.H. had admitted in his statement. His sister responded, "I guess you'll learn your lesson now that you're suspended."

At least three other students also provided statements indicating A.H. used or was in possession of alcohol or marijuana on Prom Night, and another student was almost positive A.H. consumed marijuana. May upheld A.H.'s suspension based on

3

his admission and the other students' statements. A.H. testified during his deposition that he did not let anyone know about his "false" written statement because he "was going to have [his] parents try to help [him] with the situation."

*B. D.S.'s Suspension*

May spoke briefly with D.S. on Prom Night. When Cox approached D.S., he was yelling. Cox told D.S. he had heard that D.S. was drinking alcohol and said that if D.S. did not admit it now, he would be in more trouble. D.S., who knew he could be suspended, admitted to Cox that he had been drinking. Cox instructed D.S. to sit down and he then called D.S.'s mother.

Later that night, D.S.'s mother emailed May, Cox and SVHS counselor Denise Johnson. She said that her son told her he did not drink and that he felt pressured when questioned. May responded that there were multiple reports of D.S.'s alcohol consumption and that if he felt pressured, he should have discussed it with May.

Following D.S.'s suspension, May met with his parents. May went into the conference planning to "stay with the suspension recommendation that [he] had mentioned to [D.S.'s] parents," but noted he is "always going to let a person explain what their side was, write a statement, have a discussion." At the end of such a conference, May either reconfirms his recommendation or makes a change. In this case, he reconfirmed his recommendation.

May informed D.S.'s parents that at least five students, including A.H., had provided statements indicating that their son had consumed alcohol or marijuana on Prom Night. D.S. provided May with a statement denying he was drinking. May's

4

decision to uphold the suspension was based on D.S.'s admission at the Prom and the other students' statements.

### C. A.B.'s Suspension

A.B. did not see May speaking to anyone outside the Prom venue and did not speak to May himself. A.B. did see Cox, who yelled at him. Cox said that A.B. smelled like alcohol. Baxter also smelled alcohol on A.B. Cox asked A.B. if he drank alcohol, said he was an ex-cop, asked if A.B. wanted to be tested by police and told him he could be suspended. Cox told other administrators that A.B. had admitted to drinking.

The week after Prom Night, A.B. provided a written statement to Jacobsen denying drinking. The determination to suspend A.B. was made after Jacobsen consulted with other adults who were present at the Prom, including May and Cox. Jacobsen made the referral for suspension, but she "did not feel comfortable [imposing the suspension] having not heard [A.B.'s] statement on [Prom Night]."

A.B.'s parents met with May to appeal the suspension. A.B.'s father showed May a photograph of A.B. with a breathalyzer in which he appeared to blow a 0.00, but May questioned the photo's reliability. At least five students, including A.H., provided statements stating that A.B. or someone with his first name was either drinking or intoxicated on the bus. May's decision to uphold A.B.'s suspension was based on student statements and Cox's statement that he smelled alcohol on A.B.

### D. S.P.'s Suspension

Chris Schurer, a SVHS counselor, approached S.P. at the Prom and asked her to follow him. After S.P. complied, Cox came over and started yelling at her. Cox asked S.P. if she had been drinking and she said, "No." Cox said he did not have time for

5

her "bullshit" and told her not to lie. He mentioned that other students thought she had been drinking. S.P. continued to deny drinking, but eventually, when Cox asked her to say she was drinking, she said, "Fine." Cox then called her parents.

While S.P. waited for her parents to pick her up, she spoke to Assistant Principal Baxter, who offered her a sweater. She cannot remember if he asked her about drinking or about anything that occurred on the bus. According to Baxter, S.P. told him "she had taken a sip."

S.P. spoke to May after her parents arrived. May told them that S.P. may be suspended because Cox said she had admitted to drinking alcohol. S.P. explained why she made the "[f]ine" statement to Cox. Baxter also confirmed that S.P. had admitted to drinking alcohol. At least two students, including A.H., provided statements saying S.P. drank alcohol on the bus.

S.P. learned of her suspension after she provided a written statement to Baxter denying that she drank on Prom Night. Baxter referred S.P. for suspension and attributes his decision to her prior admission to him. At S.P.'s request, however, he spoke to the friends she asked him to interview.

After S.P.'s suspension, she and her parents met with May. Her father told May that his daughter was very upset by Cox's "interrogation methods." May spoke with other adults who were at the Prom, and they shared May's opinion that Cox's behavior was normal for an administrator in that setting. May told S.P. and her parents that he could not understand a student admitting to doing something she did not do. May's decision to uphold her suspension was based on her admission and the statements from other students.

### E.  The Litigation

Following the suspensions, plaintiffs filed a complaint against the District seeking mandamus relief for failure to perform mandatory duties.  They also sought a temporary restraining order (TRO) allowing them to participate in the graduation ceremony and to prevent disclosure of the suspension records to third parties.  The trial court granted the TRO as to the suspension records and allowed S.P. to attend graduation.

The operative pleading before us is the third amended complaint (TAC), which alleges causes of action against the District for failure to perform mandatory duties and against May and Cox for procedural and substantive due process violations under section 1983.  The trial court sustained the District's demurrer to the TAC, leaving only the second cause of action against May and Cox for the Fourteenth Amendment violations.

### 1.  May's Motion for Summary Judgment

All four plaintiffs filed a collective opposition to each of the summary judgment motions.  A.H. did not specifically oppose May's motion.  D.S. claimed he was never given notice of the accusations made against him.  He did not dispute, however, that Cox told him on Prom Night that Cox had received reports he had been drinking and that D.S. had admitted that fact when given the opportunity to respond.

A.B. argued he was prematurely suspended before he could provide a written statement and was given inadequate notice of the reasons for his suspension.  S.P. admitted she received notice and a hearing prior to her suspension, but complained that the hearing was conducted by Baxter, an "unauthorized and biased disciplinarian," and that May was liable for Baxter's deficiencies as a supervisor.

7

## 2. *Cox's Motion for Summary Judgment*

D.S. and S.P. did not oppose Cox's motion. A.B. argued he was not afforded the required notice and hearing because his confession was obtained through coercion and lies perpetrated by Cox. A.H. claimed Cox falsely told him the district attorney was searching for the marijuana that was allegedly thrown in the bushes at the Prom venue. A.H. also complained that he was interrogated all day by Cox in his office, and that Cox used maximization/minimization techniques until he broke down and confessed to things he did not do.

## 3. *The Trial Court's Ruling*

The trial court granted May's and Cox's motions in their entirety, finding that *all* the asserted material facts were either undisputed or established. It concluded that plaintiffs' claims of federal due process violations were unsubstantiated, that May was not liable under a theory of supervisor liability and that both May and Cox were qualifiedly immune from suit.

## II. DISCUSSION

Plaintiffs were suspended pursuant to Education Code section 48900, subdivision (c), which authorizes suspension if the student "unlawfully possessed, used, sold, or otherwise furnished, or been under the influence of, a controlled substance listed in Chapter 2 (commencing with Section 11053) of Division 10 of the Health and Safety Code, an alcoholic beverage, or an intoxicant of any kind." Plaintiffs contend they received inadequate notice of the accusations against them and were deprived of a meaningful opportunity to be heard. They further claim May is liable in his supervisory capacity. May and Cox contest these claims and argue that, in any event, they are qualifiedly immune from suit.

8

## A. Standard of Review

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.) A defendant meets "his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2); *Szarowicz v. Birenbaum* (2020) 58 Cal.App.5th 146, 162.) "On appeal . . . , we review the determination of the trial court de novo." (*Szarowicz*, at p. 162.)

## B. The Trial Court Properly Granted the Motions for Summary Judgment

Plaintiffs contend the trial court erred by granting summary judgment on their second cause of action for Fourteenth Amendment violations against May and Cox. They assert that triable issues of material fact exist regarding their procedural due process claims. We disagree.[1]

---

[1] Although plaintiffs raised other issues and arguments in opposition to the summary judgment motions, they address only the procedural due process claims on appeal. It is well established that issues not specifically and distinctly raised in an appellant's opening brief are deemed waived. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761 fn. 4.)

9

### 1. Procedural Due Process

"When facing a temporary short-term suspension, a student has minimal procedural due process rights, including the right to a hearing.  As described by the United States Supreme Court in *Goss v. Lopez* [(1975) 419 U.S. 565, 581 [42 L.Ed.2d 725] (*Goss*)]: [¶] 'We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency.  Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.  The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.'" (*Granowitz v. Redlands Unified School Dist.* (2003) 105 Cal.App.4th 349, 354-355, fn. omitted (*Granowitz*).)

Citing a pre-*Goss* federal case, plaintiffs argue the notice must be more specific than that contemplated by *Goss*.  But both "[b]efore and after *Goss,* courts have consistently refused to impose stricter, adversarial, 'trial-like procedures and proof' on public school suspension proceedings.  Instead, an informal meeting between the school official and a student or between the official and a student and his parents has been held to comport with due process." (*Granowitz*, *supra,* 105 Cal.App.4th at pp. 355-356, fns. omitted; *Nguon v. Wolf* (C.D.Cal. 2007) 517 F.Supp.2d 1177, 1194.)  "Briefly stated, once school administrators tell a student what they heard or saw, ask why they heard or saw it and allow a brief response, a student has

received all the process that the Fourteenth Amendment demands." (*C.B. by and Through Breeding v. Driscoll* (11th Cir. 1996) 82 F.3d 383, 386 (*Driscoll*).)  To establish a procedural due process violation, the plaintiff also must show prejudice. (*Colindres-Aguilar v. INS* (9th Cir. 1987) 819 F.2d 259, 261-262.)

Plaintiffs contend the notice to A.H., A.B. and D.S. was inadequate.  They concede S.P. received adequate notice.

May did not refer A.H., A.B. and S.P. for suspension, hold a hearing on the accusations against them or impose the suspensions.  Those three students were suspended under the authority of assistant principals.  May is not liable, therefore, for any procedural due process violation as to these students unless, as we shall explain, he is liable in his supervisory capacity.

*a. A.H.'s Notice and Hearing*

A.H. contends he was not given an opportunity to be heard prior to his suspension.  The Prom was held on May 5, 2018. A.H. incorrectly asserts the decision to suspend him was made *before* Cox pulled him out of class on Monday, May 7.  At that time, Cox presented A.H. with evidence supporting his suspension and allowed him to write a statement in response. That statement admitted the charges against him.

It is undisputed that the four administrators met on May 7 without "mak[ing] any final decisions regarding specific students as they planned to meet with students individually *before* imposing any discipline."  (Italics added.)  Indeed, there would have been no reason for A.H.'s meeting with Cox if the suspension had already occurred.

A.H. had an opportunity to be heard when he met with Cox on May 7 and provided his written statement admitting the charges.  The determination to suspend A.H. was based, in part,

on his admissions.  The letter to A.H.'s mother notifying her of his suspension is dated May 8, 2018.  While the suspension began on May 7, there is no evidence it occurred prior to A.H.'s meeting with Cox.  A.H.'s presence in school that day confirms he did not have notice of any suspension.

The notice and opportunity to be heard provided by Cox more than satisfies the *Goss* procedural due process requirements for suspensions of 10 days or less.  A.H. received oral notice of the charges against him on Prom Night and again at the meeting with Cox.  A.H. was given an explanation of the evidence against him and was allowed to respond.  Nothing more was required to prevent "unfair or mistaken findings of misconduct and arbitrary exclusion from school."  (*Granowitz*, *supra*, 105 Cal.App.4th at pp. 354-355, fn. omitted.)  To the extent A.H. believed any of the evidence against him was false, he was free to say so.

Moreover, "to establish a denial of due process, a student must show substantial prejudice from the allegedly inadequate procedure." (*Watson ex rel. Watson v. Beckel* (10th Cir. 2001) 242 F.3d 1237, 1242 (*Watson*).)  A.H. has failed to meet this burden.

In *Keough v. Tate County Bd. of Educ.* (5th Cir. 1984) 748 F.2d 1077 (*Keough*), the Fifth Circuit held that where a student admitted the charges against him and was suspended, such an admission of guilt and truth of the charges precluded a procedural due process claim, even if a due process violation had in fact occurred. (*Id.* at p. 1083.)  The court reasoned that since the student had admitted the charged conduct and had knowledge that his conduct violated school rules, there was substantial evidence to support a finding that the student committed the charged conduct.  (*Ibid.*)

12

Here, it is undisputed that A.H. signed a statement admitting not only the conduct with which he was charged, but also other violations. Under these circumstances, no procedural due process violation occurred. (See *Keough*, *supra*, 748 F.2d at p. 1083.)

Finally, A.H. asserts his classification as a student under Section 504 of the Rehabilitation Act of 1973 qualified him for additional procedural safeguards, including an opportunity for his parents to participate in his "pre-suspension conference."[2] As Cox and May point out, however, "the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability as alleged in the complaint; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493; accord *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 182.) Because A.H.'s alleged disability and Section 504 rights were not raised in the TAC, we do not address them here.

### b. *A.B.'s Notice and Hearing*

A.B. contends he was not given an opportunity to be heard prior to his suspension. The Prom was held on May 5, 2018. A.B. testified his father received notice on Monday, May 7, that he was "going to be suspended." A.B. misinterprets this notice as a final notice of suspension. It is undisputed the four administrators met on May 7 without "mak[ing] any final decisions regarding specific students as they planned to meet

_____

[2] A.H.'s reference to his "pre-suspension conference" appears inconsistent with his claim that he was suspended prior to that conference.

with students individually *before* imposing any discipline." (Italics added.)

A.B. had an opportunity to be heard when he met with Jacobsen and provided a written statement denying drinking on Prom Night.  The determination to suspend A.B. was made after Jacobsen consulted with the adults who interacted with A.B. on Prom Night, including May and Cox.  The decision was based on Cox's statement that he smelled alcohol on A.B. at the Prom and the fact that at least five students, including A.H., had provided statements indicating A.B. was either drinking or intoxicated on the bus.  Contrary to his assertion, the decision was not based on A.B.'s alleged Prom Night admission to Cox that he had been drinking.

This notice and opportunity to be heard more than satisfies the *Goss* procedural due process requirements for suspensions of 10 days or less.  A.B. received oral notice of the charges against him on Prom Night and again at the conference with Jacobsen. He denied the charges at that meeting, and was given an explanation of the evidence against him and allowed to respond. Nothing more was required.  (See *Granowitz*, *supra*, 105 Cal.App.4th at pp. 354-355.)

### c. S.P.'s Notice and Hearing

S.P. concedes she was given adequate notice of the charges, but claims she was deprived of procedural due process because she was not afforded a meaningful opportunity to be heard by an impartial decisionmaker.  She specifically challenges Baxter's authority and fitness for handling a student disciplinary proceeding.  It is undisputed, however, that May had given all three assistant principals, including Baxter, "written authority to act as his designee and impose suspensions."  And Baxter's

14

familiarity with the facts of S.P.'s case also did not disqualify him as a decision-maker. (*Hortonville Joint School District No. 1 v. Hortonville Education Assn* (1976) 426 U.S. 482, 493 [49 L.Ed.2d 1].)

Baxter's decision to suspend S.P. was based on her "admitting to *him* that she drank on Prom [N]ight." (Italics added.) S.P. complains that Baxter refused to consider the evidence of three witnesses who could confirm she was not drinking that night. The record reflects, however, that Baxter spoke with the students S.P. asked him to interview.

### d. *D.S.'s Notice and Hearing*

May suspended D.S. based on his Prom Night conduct. After D.S. arrived at the Prom venue, a school counselor brought him to an outside gathering with May and other students. Cox told D.S. he had reports he was drinking and said that if D.S. did not admit to drinking now, he would be in more trouble. D.S. admitted he had been drinking.

Once D.S. admitted to conduct punishable by suspension, he was not entitled to a further explanation of the accusations or a further opportunity to present his version of the events. (*Driscoll, supra*, 82 F.3d at p. 386; *Watson, supra*, 242 F.3d at p. 1242.) As previously discussed, once a student admits to the charged conduct with knowledge that it violates school rules, substantial evidence supports a finding that the conduct occurred. (*Keough, supra*, 748 F.2d at p. 1083.) An admission of such guilt, therefore, precludes a procedural due process claim even if a due process violation did in fact occur. (*Ibid.*)

### 2. *May's Supervisory Liability*

The doctrine of respondeat superior does not apply to section 1983 claims. (*Harbeck v. Smith* (E.D.Va. 2011) 814

15

F.Supp.2d 608, 626.) "[S]upervisors can be held liable 'in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms.'" (*Id.* at pp. 626-627.) Given our decision that May and Cox were entitled to judgment on plaintiffs' procedural due process claims, May cannot be held liable for these claims in a supervisory capacity. (*Doe v. Rosa* (4th Cir. 2016) 664 Fed.Appx. 301, 304 ["There can be no supervisory liability when there is no underlying violation of the Constitution"].)[3]

## III.  DISPOSITION

The judgments are affirmed.  May and Cox shall recover their costs on appeal.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

YEGAN, Acting P.J.          TANGEMAN, J.

---

[3] Since we have decided plaintiffs' constitutional claims in May and Cox's favor, we need not address their qualified immunity defense. (*Ruiz-Casillas v. Camacho-Morales* (1st Cir. 2005) 415 F.3d 127, 134 ["[F]ailure of appellant's constitutional claims obviates our need to address the qualified immunity defense"].)

16

Kevin DeNoce, Judge
Superior Court County of Ventura

_____

SLC Law Group, Louis F. Teran, on behalf of Plaintiffs and Appellants.

Woo Houska, Carol A. Woo; Garcia Hernandez Sawhney, Nitasha Sawhney and Janet Ly, for Defendants and Respondents May and Cox.